**In re Petition of Selwyn TRAKMAN as Provisional Liquidator of Cape Lines Limited, a Debtor in a Foreign Proceeding.**

Bankruptcy No. 83B10091.

United States Bankruptcy Court, S.D. New York.

Oct. 20, 1983.

Delson & Gordon, New York City, for Selwyn Trakman.

Gifford, Woody, Palmer & Serles, New York City, for Norton, Lilly & Co., Inc.

Poles, Tublin, Patestides & Stratakis, New York City, for Ceres Corp.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

The matter before this Court concerns the disposition of motions brought on by Norton, Lilly & Company, Inc. ("Norton Lilly") and Ceres Corporation ("Ceres"). Norton Lilly and Ceres seek to dismiss the petition filed under 11 U.S.C. § 304[1] on behalf of Selwyn Trakman ("Trakman"). Cape Lines Limited ("Cape Lines"), it is alleged in Trakman's petition, is the subject in South Africa of a "foreign proceeding", as that term is used in section 304. Trakman, according to the petition, is the "provisional liquidator" of Cape Lines' estate. Norton Lilly and Ceres request the dismissal of the petition, principally on the grounds that (1) this Court lacks subject matter jurisdiction to entertain the petition; (2) the petition fails to state a claim upon which relief can be granted; and (3) the petitioner has acted in bad faith and is guilty of laches. For the reasons set forth below, the relief sought by the movants is denied.

*Facts*

Cape Lines, a South African shipping corporation, operated a freight service between the United States and South Africa. Norton Lilly, a steamship and airlines agent, was hired by Cape Lines in January of 1982 to provide certain services to Cape Lines which included collecting and remitting to Cape Lines freight charges that were owed to the latter. Ceres is a corporation which, it claims, was solicited by Norton Lilly to provide stevedoring and other services to Cape Lines vessels. Ceres maintains that certain services were rendered by it to Cape Lines for which it has not been paid.

On November 22, 1982 certain Cape Lines creditors were informed that the provisional winding up of Cape Lines was ordered under the laws of South Africa. In response five different creditors including Ceres commenced seven maritime actions against Cape Lines in four different district courts in the United States, a predictable conse-

---

1. § 304 *Cases ancillary to foreign proceedings:*

(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (e) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the proceeding of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

quence of the dissemination of the news of Cape Lines' fate. In connection with these actions writs of maritime attachment and garnishment were served by the creditors on Norton Lilly in the hopes of seizing whatever monies or other Cape Lines assets were being held by Norton Lilly in its capacity as Cape Lines' agent. In addition, demand was made on Norton Lilly by Cape Lines' for the remittance of all sums received by Norton Lilly on Cape Lines' behalf.

In response to the sudden flurry of attention it was receiving from Cape Lines and Cape Lines' creditors, Norton Lilly commenced an interpleader action in the District Court for the Southern District of New York on December 3, 1982. The interpleader property consisted of cash and/or receivables totalling approximately $170,000.00 which Norton Lilly had been holding for Cape Lines' account. On December 6, 1983 a temporary restraining order was issued by the district court enjoining the institution or maintenance of any action against Norton Lilly to secure the payment of any of Cape Lines' debts. According to Norton Lilly, over 500 Cape Lines' creditors were served by the order and joined in the interpleader action. Finally, on January 3 the district court issued a preliminary injunction similarly enjoining all action against Norton Lilly.

The focus of this scenario shifted to this Court on January 20, 1983 when Trakman filed his petition under 11 U.S.C. § 304. In the petition Trakman requested of this Court, *inter alia,* an order staying all acts of creditors against any Cape Lines property located in the United States, a turnover of all Cape Lines assets in Norton Lilly's hands, and the authority to avoid any preferential transfers of Cape Lines assets that may have occurred in this country. As already noted Norton Lilly and Ceres responded to Cape Lines' petition by moving for its dismissal on the grounds enumerated above.

*Issues*

The issues before this Court are whether this Court lacks subject matter jurisdiction over Trakman's section 304 petition and, assuming this Court has such jurisdiction, whether the interests of the creditors and the debtor would be better served by the dismissal of the section 304 petition.

*Discussion*

A. *Subject Matter Jurisdiction*

Norton Lilly and Ceres allege that bankruptcy court jurisdiction over this case no longer exists given the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon* the Supreme Court found the jurisdictional grant in the Bankruptcy Code defective.

Since the expiration on December 24, 1982 of the stay of that *Marathon* decision, bankruptcy courts have been operating under an emergency rule pending Congressional action to amend the Code. *See, e.g.,* Emergency Rule I (December 21, 1983 S.D. N.Y.) (the emergency rule adopted in this district). That rule affirms this Court's jurisdiction over the instant case. Emergency Rule I has been upheld by district courts in our circuit on several occasions. *See, e.g., In re Gerald Kaiser,* 32 B.R. 701 (D.C.S.D.N.Y.1983); *In re Q1 Corporation,* 28 B.R. 647 (D.C.E.D.N.Y.1983); *In re Johns Manville Corporation, et al.,* 31 B.R. 627 (Bkrtcy.S.D. N.Y.1983). Further, every circuit court which has examined the emergency rule has upheld it. *See, e.g., In re Braniff Airways,* 27 B.R. 231 (Bkrtcy.N.D.Tex.1983) *aff'd sub nom,* 700 F.2d 214 (5th Cir.1983), *cert denied,* —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *In re White Motors Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *Matter of Orville E. Hansen,* 702 F.2d 728 (8th Cir.1983). However, some bankruptcy courts have struck down the emergency rule, arguing, *inter alia,* that (1) the district courts were divested of jurisdiction by *Marathon* and, thus, cannot promulgate a rule delegating their bankruptcy jurisdiction to the bankruptcy courts; and (2) only legislative action, not judicial fiat, can remedy the jurisdictional defect. *See, e.g., Matter of Wildman,* 30 B.R. 133 (Bkrtcy.N.

D.Ill.E.D.1983); In the *Matter of Seven Springs Apartments,* 33 B.R. 458, 10 B.C.D. 634 (Bkrtcy.N.D.Ga.1983).

■ This Court recognizes the jurisdictional dilemma posed by the *Marathon* decision and the subsequent failure of Congress to remedy the jurisdictional defect. Further, the bankruptcy court decisions striking down the emergency rule rigorously analyze the issues posed by *Marathon* and their arguments are somewhat persuasive. Nonetheless, this Court finds that the emergency rule is valid and that subject matter jurisdiction over this case exists for the following reasons. First, this Court is obligated to follow the decisions of higher courts in our district which uphold the rule. Second, this Court views the chaos and dislocations that would arise from a contrary holding unconscionable. Bankruptcy courts have always been courts of equity. A finding that bankruptcy courts lacked jurisdiction would work the gravest of inequities on jobs, reorganization efforts and the economic well being of those seeking an opportunity for a fresh start under the Bankruptcy Code.

In this Court's view, the affirmance of the emergency rule does not mitigate the need for Congress to act. The uncertainty and procedural difficulties imposed by *Marathon* must be dispelled. However, until Congress acts, this Court will function under the emergency rule. The motions to dismiss for lack of subject matter jurisdiction are denied.

B. *Dismissal of Trakman's section 304 petition*

The filing of Trakman's petition under 11 U.S.C. § 304 triggered the application in this Court of a provision of statutory law relatively new to bankruptcy jurisprudence. According to the legislative history, section 304 is designed to permit a foreign representative of a foreign bankruptcy estate (or the legal equivalent thereof) to file a petition under the code "in order to administer assets located in this country, to prevent dismemberment by local creditors of assets located here, or for other appropriate relief." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324–325 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5821. While a section 304 petition "does not commence a full bankruptcy case", Id.; *see,* 11 U.S.C. § 541(a), by virtue of section 304(b), "this Court is free to broadly mold appropriate relief in near blank fashion" in order to enforce the equitable policies that underlie the code. *Matter of Culmer,* 25 B.R. 621 (Bkrtcy.S.D.N.Y.1982).

■ In the instant action, Trakman's petition properly invoked the jurisdiction of this Court by alleging (1) that there was instituted a "foreign proceeding" against the debtor; (2) that the petitioner was a "foreign representative" entitled to file the action under 11 U.S.C. § 304; and (3) that the debtor had certain assets within the judicial district where the petition was filed. *Matter of Stuppel,* 17 B.R. 413, 415 (Bkrtcy.S.D.Fla.1981); *Matter of Toga Mfg. Ltd.,* 28 B.R. 165, 167 (Bkrtcy.E.D.Mich.S.D. 1983). Regardless of the merits of these allegations, on their face they establish sufficient grounds to permit this Court to entertain the action for relief. *Stuppel* at 415. However, it appears to this Court that much, if not all, of the relief sought by the petitioner is presently available to him in the interpleader action now before the district court. By virtue of that action, all acts by local creditors to dismember the debtor's estate have been stayed, notice has been given to hundreds of creditors, and the property itself which Trakman seeks to have turned over can be turned over if the district court, in its discretion, so decides. Indeed, during oral argument the petitioner's attorney confessed that, apart from the issue of voidable preferences, the action before this Court is essentially duplicative of the district court interpleader action.

Rather than permit this matter to be reduced to mere redundancy of an already existing action in the district court, this Court chooses to suspend all proceedings in this case under 11 U.S.C. § 305. This will allow both the district court and the parties before it in the interpleader action to con-

tinue undistracted in their efforts to resolve the issues before them. This Court is aware of the petitioner's concern over possible preferential transfers of the debtor's property that may have occurred in this country. However in electing to suspend rather than dismiss Trakman's § 304 petition, this Court achieves the twin goals of preserving whatever rights had existed to avoid preferential transfers on the petition day, and fostering judicial economy for the benefit of debtor and creditors alike. *See, In re Bahamas Spas,* No. SA–80–00096–PE, slip op. (Bankr.C.D.Cal. Feb. 25, 1980) (Case suspended for sixty days to permit creditors to uncover evidence of voidable transfers. In view of existing assignment for the benefit of creditors, failure to uncover any such evidence would warrant dismissal under 11 U.S.C. § 305).

*Conclusion*

For the reasons set forth above, the Court holds that all proceedings in this case are suspended pending the disposition of the interpleader action commenced by Norton Lilly in the district court, or until such time as is deemed proper by the district court. The motions by Norton Lilly and Ceres are denied.