In re Allan GEE, as Official Liquidator of Universal Casualty & Surety Company (In Liquidation) pursuant to the Companies Law of the Cayman Islands, British West Indies.

In re UNIVERSAL CASUALTY & SURETY CO. LTD., a/k/a Casualty and Indemnity Co., Ltd., Debtor.

UNIVERSAL CASUALTY & SURETY CO. LTD., a/k/a Casualty and Indemnity Co., Ltd., Plaintiff,

v.

Allan GEE, as Official Liquidator of Universal Casualty and Surety Company Ltd. (In Liquidation) pursuant to The Companies Law of the Cayman Islands, British West Indies, Defendant.

Bankruptcy Nos. 85 B 10402 (TLB), 85 B 10457 (TLB).

United States Bankruptcy Court, S.D. New York.

Oct. 18, 1985.

Booth, Marcus & Pierce, New York City by Edgar H. Booth, for Tansure, Ltd., et al.

Alan W. Faigin, Los Angeles, Cal., for Fremont Indem. Corp. and Maxi Care.

Wofsey, Certilman, Haft, Lebow & Balin, New York City by Martin Brecker, John Preefer, Jeffrey W. Levitan, for debtor.

White & Case, New York City by Allan Gropper, Dwight Healy, Robert S. Herbst, Aldo A. Badini, for Allan Gee.

Cornelius Blackshear, U.S. trustee for the S.D. of N.Y., New York City by Victor Abrunzo.

Oppenheim & Rosenstein, New York City by Jerome Oppenheim, for Shah & Reddy.

Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, New York City by Charles D. Bock, Jeffrey K. Cymbler, for Lloyd's of London and Syndicates 700, 701, 667 and T.L. Clowes.

TINA L. BROZMAN, Bankruptcy Judge.

In this international chess game the players are a defunct Cayman Islands reinsurance company whose management is in New York, creditors are in three continents and records are in Mexico, New York and London and a liquidator of the reinsurance company appointed by the Grand Court of the Cayman Islands. The adversaries have each filed a petition for relief in this court. The liquidator filed one pursuant to section 304 of the Bankruptcy Code ancillary to a pending Cayman Islands liquidation and the reinsurance company countered by filing a chapter 11 petition. To resolve the host of motions pending before the court and presenting an array of novel legal issues, the court must determine the viability of these competing petitions.

Allan Gee ("Gee"), the court-appointed foreign liquidator, moves to dismiss the chapter 11 petition filed by Universal Casualty & Surety Company Ltd. ("Universal"); Universal moves to dismiss Gee's 304 petition. In addition, Gee moves for an order declaring him a foreign representative and approving his ancillary 304 petition; Universal moves for a preliminary injunction restraining Gee from performing his duties, turnover of books and records from him and an accounting. Extensive and

numerous memoranda of law were submitted to the court along with some thirty affidavits and books of exhibits. After oral argument by counsel for Gee, Universal, the United States Trustee (which joined in Gee's motions) and various creditors, counsel conceded that there were no disputed material facts and declined to have an evidentiary hearing. Careful scrutiny of the voluminous record and review of the pertinent law have convinced the court that the chapter 11 case should be dismissed and that ancillary relief should be granted to Gee pursuant to section 304 of the Code.

FACTS

Universal, under a predecessor name, was created on July 29, 1977 pursuant to the laws of the Cayman Islands to engage in the insurance and reinsurance business. Virtually all of its issued shares were issued to a holding company whose ultimate ownership has not been clarified.[1] According to its audited financial statements, Universal's capital as of June 30, 1978 consisted of $5,000,000 paid for the issuance of 5,000,000 shares and $5,000,000 of additional paid-in-capital. Gee questions whether this $10,000,000 capital ever existed; Universal contends that it was used to purchase an $11,500,000 reinsurance treaty on August 31, 1984 from an unidentified reinsurer.[2] It was partially in an effort to determine what happened to Universal's capital, that Gee commenced his 304 proceeding. From August 2, 1978 until at least September 20, 1983, Vishwa Shah was the sole director of Universal. Because of ill health and a pending merger, he purported to resign on the latter date. No other directors were appointed subsequent

to his resignation. Several months prior to his resignation Shah approved, executed and delivered to one Pingle S. Reddy an appointment as attorney-in-fact for Universal. Shah, subsequent to his purported resignation, continued to act as a consultant to Universal or, if his resignation was ineffective, as a director. Both Shah and Reddy have for many years resided in New York City.

Universal conducted business as a reinsurance company until approximately two years ago when its insurer's license was suspended by the Superintendent of Insurance of the Cayman Islands. At the time that Universal was created, the conduct of insurance business within the Cayman Islands was virtually wholly unregulated. In 1980, the Office of Superintendent of Insurance was established and a licensing system was created. Universal applied for, and obtained, a license which was suspended on July 13, 1983 for a number of reasons including Universal's failure to obtain a Cayman Island licensed underwriting manager, its inability to provide certain kinds of financial records retroactively and its failure to have appointed two new directors with insurance expertise.

After the Cayman Islands terminated Universal's license, Universal attempted to merge with Reaseguros del Golfo, S.A. ("Golfo"), a Liberian company with an office in Mexico. The purpose for the merger was to obtain a new domicile for Universal out of which it could continue to write new insurance. In furtherance of its aim, Universal sent its books and records to Mexico. The merger was attempted without the approval of the Superintendent of

---

1. The record contains contradictory evidence of the holding company's immediate and beneficial ownership. Gee has apparently not yet unraveled that small mystery. The debtor did not enlighten the court either.

2. Universal redacted the name of the reinsurer from the agreement which in discovery it produced to Gee although it offered to reveal the identity of the reinsurer *in camera* to the court. The reason for Universal's reluctance to reveal its reinsurer's name is made clear by the testimony of Pingle Reddy, a person who holds a power of attorney to act on behalf of Universal,

at his examination pursuant to Rule 2004, at which he stated:

"[The Reinsurance Agreement] was fundamentally undertaken to prevent the Cayman group of people whose actions and conduct was not in the best interest of Universal from being prevented to having access to those funds." (Reddy Tr. 374).

One wonders why Universal needed an $11,500,000 reinsurance treaty when in its bankruptcy petition it claimed *total* liabilities of slightly over $4,000,000.

Insurance; when the Superintendent ultimately refused to approve the merger, Golfo backed out.

On September 16, 1984, Maxicare Health Plans, Inc. of Hawthorne, California, a creditor of Universal, filed a petition in the Grand Court of the Cayman Islands in George Town, Grand Cayman, alleging that Universal was insolvent and unable to pay its debts and requesting the court to order Universal's winding-up under the Cayman Islands Companies Law ("Companies Law"). The petition was duly served on Universal. Notice of its filing was published in a local newspaper as well as the London Financial Times and the Wall Street Journal. Numerous creditors supported the petition; none opposed. Neither did Universal. An order was issued on October 1, 1984 granting the relief sought and appointing Gee as official liquidator. Universal never appealed.

In his capacity as official liquidator, Gee on March 27, 1984 commenced a proceeding ancillary to the Cayman Islands bankruptcy by filing in this district a petition pursuant to section 304 of the Code. The petition seeks various forms of relief including discovery, preliminary injunctions prohibiting Shah, Reddy and various other persons from disposing of assets and books and records, and orders directing Shah, Reddy and other persons to turn over to Gee all of Universal's property and its books and records. The petition includes allegations that there are books and records of Universal in New York and that assets may be in New York or may have been fraudulently transferred out of New York.

The petition was accompanied by a proposed order to show cause which sought *ex parte* temporary restraining orders and discovery as well as the eventual entry of the preliminary injunction requested in the 304 petition. The court entered the proposed order.[3] Hours before the hearing on the preliminary injunction, Reddy filed a chapter 11 petition for Universal, setting the stage for the issues now before the court. At the conclusion of the hearing, the court ruled that Gee on the affidavits produced had failed to carry the burden necessary for the issuance of preliminary injunctions and that the injunctions were largely unnecessary since Universal, as a fiduciary debtor in possession, could not freely transfer and dispose of its assets. However, the court granted Gee the right to conduct examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of virtually all of the persons whom he had sought to depose.[4] In addition, the court directed Universal to produce at the examination those of its books and records located in the New York metropolitan area and to bring into New York City as soon as practicable such of its books and records as were necessary for the conduct of its chapter 11 case.[5]

With the cases in that posture, the antagonists moved to dismiss each others' petitions and for the additional relief described above. Gee argues that the chapter 11 petition should be dismissed under section 305 of the Code since there is a pending foreign proceeding and the factors set forth in section 304(c) warrant dismissal; under section 1112(b) for cause since Universal is not an eligible debtor under section 109 and since the petition was filed in bad faith; and because Reddy lacked authority to file it. The United States Trustee joined in Gee's motion arguing that Universal is not an eligible debtor and that Gee's appointment as liquidator divested Universal of the power to file its petition. Universal moves to dismiss the 304 petition on the grounds that the good faith filing of a valid chapter 11 petition supersedes and

---

3. The court thereafter vacated a portion of the temporary relief granted.

4. Pursuant to section 305(b) of the Code, a foreign representative such as Gee may seek dismissal or suspension of a bankruptcy case; thus, Gee was entitled to uncover facts relevant to that type of motion. Because of Shah's prov-

en ill health, the court directed that he be examined by written interrogatory rather than oral questions.

5. Notwithstanding this order, from which Universal did not appeal, it in fact immediately removed certain books and records from New York to London.

precludes ancillary jurisdiction under section 304; the criteria of section 304(c) have not been met, most particularly, because comity should not be afforded; and if Universal is not a debtor eligible to file a chapter 11 petition, its liquidator cannot qualify for ancillary relief.[6]

Universal's plea that comity should not be afforded and that its chapter 11 case should survive is grounded in Universal's contention that it was denied a fair opportunity to defend itself prior to the issuance of the winding-up order and in its supposition that Gee, whom Universal claims to be biased against it, will pay creditors who do not hold valid claims. The chapter 11 petition was an effort, the debtor argues, to preserve and protect assets of the estate so as to enable payment to *bona fide* creditors and to preserve equity for Universal's shareholders. Universal's argument that justice did not and will not prevail in the Cayman Islands is based on the following series of events.

When the Cayman Islands liquidation action was commenced against Universal, a hearing was scheduled for October 1, 1984. In an effort to oppose this liquidation, Reddy arranged with Universal's general counsel in New York, Jerome Oppenheim, Esq., to forward a $10,000.00 retainer to two Cayman Island attorneys, Raymond and Michael Alberga, to represent Universal at the October 1 hearing. These attorneys were apparently retained through the aid of Universal's local attorney, Roger Aylen. Mr. Maurice Rutty, the then acting managing agent and underwriter for Universal who was familiar with Universal's accounts, assets and liabilities, went to the Cayman Islands equipped with affidavits of Reddy and Shah presumably to testify and attempt to demonstrate that Universal was not insolvent. On the Friday morning before the Monday hearing, the Albergas withdrew as counsel for Universal. That same day Mr. Oppenheim gave specific telexed and telephonic instructions to Aylen to seek an adjournment by written application and to serve and file the affidavits of Shah and Reddy. No one appeared on behalf of Universal at the hearing to seek an adjournment—not the Albergas, not Aylen and not Rutty (who had left the Cayman Islands during the intervening weekend).[7] And no written request was made by Universal for an adjournment.

In a carefully worded affidavit, Aylen swears that he went to the clerk of the court, not to the presiding judge, on Monday morning at which time he filed the Shah and Reddy affidavits and was informed that the hearing on the petition to wind up Universal would not be postponed. At the hearing, Maxicare's counsel brought the existence of the Shah and Reddy affidavits to the court's attention and argued they were inadmissible on various grounds including technical procedural defects, failure of the deponents to state they were authorized by Universal to swear an affidavit,[8] hearsay,[9] ambiguity and failure to plead fraud with particularity. (Affidavit of Andrew Jones at paras. 13–15.) The presiding judge declared the affidavits inadmissible. The Superintendent of Insurance, through counsel at the hearing, supported the winding up order which was ultimately granted. Gee was appointed liquidator.

6. Mr. Oppenheim, attorney for Shah and Reddy, filed a memorandum of law in support of Universal's motion to dismiss the 304 petition. The arguments set forth therein comport with those of Universal's counsel.

7. Universal initially argued that Aylen was a solicitor, not a barrister, and could not represent it in the court but later conceded that all Cayman Islands attorneys may appear before the court.

8. Shah stated that he had resigned well before executing the affidavit. Reddy stated that he had been granted a special power of attorney to provide "specific management services" to Universal. He did not claim to be a director. His affidavit did not annex a copy of any resolution of the board of directors nor a copy of the power of attorney.

9. Reddy's affidavit states that he was told by Rutty that the petitioning creditor's claim was invalid and that he was told by Universal's current and former run-off managers that it was solvent. He does not claim to have any personal knowledge of either matter.

It is upon the events described that Universal bases its challenge to the Cayman Islands proceedings. Universal argues that this court can infer that since the Cayman Islands bar consists of only 54 attorneys, Universal would have been unable to retain counsel after Alberga's withdrawal, had Universal sought to do so. But Universal did not seek substitute counsel, allowed its only witness to leave the Cayman Islands and never explained why Aylen did not appear on its behalf, if not to contest the petition, at least to seek an adjournment. Moreover, Universal did not seek to have other counsel admitted *pro haec vice* and did not appeal. Its sole challenge to the events in the Cayman Islands was mounted in this court and then, only after the liquidator attempted to obtain discovery through this court.

## DISCUSSION

### I.

Since Universal has itself purported to invoke the jurisdiction of this court to liquidate in bankruptcy, it is clear that the parties agree that there is a need for a bankruptcy. Where Universal and Gee diverge is with respect to the nature of the case to be conducted before this court and the identity of the person who will direct it.

A case under section 304 is not a full-scale bankruptcy case with an automatic stay prohibiting dismemberment of assets by vigilant creditors or with avoiding powers given to a fiduciary, be it a trustee or debtor-in-possession, to ensure equality of distribution among creditors. *See Cunard Steamship Company Limited v. Salen Reefer Services AB*, 773 F.2d 452, 454, Slip op. at 6206 (2d Cir. Sept. 19, 1985). Rather, a 304 case is a limited one, designed to function in aid of a proceeding pending in a foreign court. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324–325 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5821, 6280, 6281; 2 Collier, *Bankruptcy* ¶ 304.01 (15th ed. 1985); *In re Trakman*, 33 B.R. 780, 783 (Bankr.S.D.N.Y.1983); *In re Culmer*, 25 B.R. 621, 624 (Bankr.S.D.N.

Y.1982). A chapter 11 case, on the other hand, gives rise to an automatic stay and, unless a trustee is appointed for cause, clothes the debtor in possession with the ability to avoid transfers which, absent bankruptcy, it could not otherwise undo.

In enacting section 304, which had no predecessor under the former Bankruptcy Act, Congress provided a mechanism for the courts in this country to aid foreign courts and accommodate the increasing number of foreign insolvency proceedings having extraterritorial effects within the United States. *See* 2 Collier, *Bankruptcy* ¶ 304.01 (15th ed. 1985) and authorities cited therein; *see also* S.A. Morales & B.A. Deutsch, *Bankruptcy Code Section 304 and U.S. Recognition of Foreign Bankruptcies: The Tyranny of Comity*, 39 Bus. Law. 1573 (1984) (hereinafter "Morales & Deutsch"); B.J. Gallagher & J. Hartje, *The Effectiveness of § 304 In Achieving Efficient and Economic Equity in Transactional Insolvency* 1983 Annual Survey of Bankr.L. 1 (hereinafter "Gallagher & Hartje"); Note, *Section 304 of the Bankruptcy Code: Has it Fostered the Development of An "International Bankruptcy System"* 22 Colum.J. of Trans.L. 541 (1984).

To implement the congressional policy, the bankruptcy court is equipped pursuant to § 304(b) with the very broad power to:

(1) enjoin the commencement of—

 (A) any action against—

 (i) a debtor with respect to property involved in such foreign proceeding; or

 (ii) such property; or

 (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order other appropriate relief.

In allowing the bankruptcy court to order "other appropriate relief," Congress has recognized the bankruptcy courts' need for considerable flexibility in confronting the multitude of complex and unforseen prob-

lems that are associated with international bankruptcy cases. H.R.Rep. No. 595, *supra* at 35, U.S.Code Cong. & Admin.News 1978, at 5996; 2 Collier, Bankruptcy, *supra* at ¶ 304.02. In the words of *Culmer,* the court "is free to broadly mold appropriate relief in near blank check fashion...." 25 B.R. at 624.

Not only is the court given broad latitude to fashion appropriate relief under section 304, but it is given broad latitude in determining whether to allow the 304 petition and whether under section 305 to suspend or dismiss any other bankruptcy cases pending before it and involving the same debtor. As section 304(a) makes clear, for a 304 petition to be properly filed, there must be both a foreign proceeding to which the 304 case will be ancillary, and a foreign representative who has filed the petition. A "foreign proceeding" is defined in section 101(20) of the Code as a

"proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension or discharge, or effecting a reorganization.

A "foreign representative" is defined in section 101(21) as a

duly selected trustee, administrator, or other representative of an estate in a foreign proceeding.

Once the 304 petition is filed, the court is directed to determine whether to grant relief under section 304(b) by looking to "what will best assure an economical and expeditious administration of such estate" consistent with six enumerated factors, the last of which is inapplicable here:

(1) just treatment of all holders of claims against or interest in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

Congress provided that where these factors militate in favor of approving the 304 petition, this court should consider dismissing or suspending any other case pending under title 11. Specifically, Section 305(a) provides so far as pertinent:

(a) The court, after notice and a hearing may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(2)(A) there is pending a foreign proceeding; and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

Section 305(b) permits a foreign representative to seek dismissal or suspension under subsection (a)(2), even if the foreign representative has not filed a 304 petition.

Turning to the case at bar, Universal refrains, and wisely so, from contesting the applicability of the definition of a foreign proceeding to the case before the Grand Court or the definition of a foreign representative to Gee. Rather, Universal has a five-fold argument intended to 'convince this court that the 304 petition should not be allowed. As succinctly stated as possible, Universal contends:

(i) that a 304 case, unlike a chapter 11 case, is purely *in rem* so that the petition must allege that there are assets in this jurisdiction;

(ii) that comity is not warranted because of the asserted lack of due process which preceded the issuance of the winding-up order by the Grand Court;

(iii) that the shareholders can only be protected by a bankruptcy case in this court which they control;

(iv) that the chapter 11 case automatically superseded the 304 petition; and

(v) that the debtor in a 304 case must be eligible for chapter 7 or 11 relief, so that if Universal is not eligible to be a debtor under chapter 11, Gee's petition, too, must fall.

### A.

■ Universal would have this court hold that a chapter 11 case is an *in personam* one so that the existence of property within the reach of the court is unnecessary to sustain the chapter 11 case but essential if a 304 case is commenced. In so arguing, Universal attempts to create a distinction where none exists, for *all* bankruptcy cases are essentially *in rem*. *See Meek v. Centre County Banking Co.*, 268 U.S. 426, 429, 45 S.Ct. 560, 561, 69 L.Ed. 1028 (1924); *Hanover National Bank v. Moyses*, 186 U.S. 181, 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113 (1902). Yet the *in rem* nature of bankruptcy has never prevented this court from granting discharges of debt even in cases where the debtor admittedly has no assets. To hold that for relief under a 304 petition to be granted, the debtor must be shown at that time to have assets within the United States would be to rewrite the statute.

Universal's argument is predicated upon the statements in three cases that for relief to be granted to the petitioner pursuant to section 304, there must be property present within the district involved in the foreign proceeding. *See In re Stuppel*, 17 B.R. 413, 415 (S.D.Fla.1981); *Trakman, supra*, 33 B.R. at 783; *In re Toga Manufacturing*, 28 B.R. 165, 167 (Bankr.E.D.Mich. 1983); *see also Angulo v. Kedzep*, 29 B.R. 417, 419 (S.D.Tex.1983) (stating that there must be property in the United States, rather than in the district).

*Stuppel* is distinguishable on its facts because of the nature of the ancillary relief sought. There, the relief requested was turnover of property allegedly fraudulently transferred by the debtor (see the bankruptcy court's decision at 7 B.R. 341). And the debtor had not been served with the 304 petition. *Id.* The bankruptcy court held that the venue requirements for a turnover proceeding pursuant to the then applicable venue statute, 28 U.S.C. § 1474(b), had not been met, because the petition did not allege that as of the date that the petition was filed the debtor owned property within the district. Accordingly, the bankruptcy court dismissed the petition. The district court reversed, holding that the mere allegation of a fraudulent transfer was sufficient to find *in rem* jurisdiction. Similarly, *Trakman* and *Toga* both involved 304 petitions in which the relief sought was turnover of assets and injunctions protecting property.

Only *Angulo* involved simply a request for discovery. Citing *Stuppel*, the court mentioned that the debtor owned assets in the United States so that the prerequisites for application of section 304 had been met. 29 B.R. at 418. The court did not hold that the presence of assets was mandatory. It does not appear that any conflict had been raised as to jurisdiction; the debtor in fact joined in the petition but challenged the use of section 304 for discovery purposes only. Inasmuch as this court finds *Stuppel* distinguishable and, further, since no jurisdictional issue appears to have been raised in *Angulo*, that case cannot be read to mandate that in every case where discovery is the primary relief sought, there must be a showing that there was property in the district when the 304 petition was filed.

Not only is this court empowered to protect property in a 304 case, it is statutorily empowered as well pursuant to section 304(b)(3) to "order other appropriate relief." As the legislative history instructs,

[W]here a foreign bankruptcy case is pending concerning a particular debtor and that debtor has assets in this country, the foreign representative may file a petition under this section, which does not commence a full bankruptcy case, in order to administer assets located in this country, to prevent dismemberment by

local creditors of assets located here, *or for other appropriate relief* . . .

House Report No. 95–595, 95th Cong., 1st Sess. 324–325 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 35 (1978), U.S. Code Cong. & Admin.News 1978, 5821, 6280, 6281 (emphasis supplied). Although it may not be appropriate in every case to allow a 304 petition solely for the purposes of discovery if there is no property in the United States involved in the foreign proceeding, where, as here, there is a strong nexus with this country and this district, that relief *is* appropriate. Universal itself argues that New York City is its principal place of business and is the nerve center of its operation (subsequent to the suspension of its Cayman Island license). Since, as the 304 petition alleges, the debtor's corporate management, its legal counsel and accountants are all here resident, some of its corporate books and records are here, it maintained numerous bank accounts here which were closed less than two years ago, and it may have other assets including its $10,000,000 share capital here, there is a sufficient jurisdictional predicate to allow discovery to ascertain the existence and location of the debtor's assets, including any causes of action which it may possess. And, of course, in arguing to this court that there is a sufficient nexus for the maintenance of a comprehensive chapter 11 case, Universal has necessarily conceded by implication that there is a sufficient nexus for the maintenance of the more limited bankruptcy case created by section 304.

The specially-created venue provisions for 304 cases found at 28 U.S.C. § 1410 and which are pegged to the nature of the relief sought in the petition buttress the conclusion that Congress envisioned the maintenance of 304 cases in which the debtor has a place of business in the United States but does not necessarily have any assets here. Subparagraph (c) certainly appears to have been drafted with the "other appropriate relief" provision of section 304 in mind. The germane portion of the statute provides:

(c) A case under section 304 of title 11 other than a case specified in subsection (a) or (b) of this section [seeking an injunction or turnover], may be commenced only in the district court for the district in which is located the principal place of business in the United States, or the principal assets in the United States, of the estate that is the subject of such case.

Given that section 304 was drafted "to permit courts to make appropriate orders under the circumstances of each case considering the principles of international comity," *Angulo*, 29 B.R. at 419, it is most appropriate that the judiciary not engraft onto section 304 a rule of jurisdiction so restrictive as to preclude the very flexible approach to international bankruptcies which Congress sought to promote.

B.

 Moving from Universal's jurisdictional argument to its debtor eligibility argument, Universal urges that if, as a foreign reinsurer which has a place of business in the United States and does not presently write insurance in the United States [see section 109(b)], it is ineligible for chapter 11 relief then Gee cannot maintain a 304 case. This court does not agree. Universal's position rests on a slender reed—an inference drawn from *Angulo*. In that case, the debtor was in fact eligible for chapter 11 relief. The court so noted and held that the eligibility requirements for the 304 petition had therefore been met. The court did not discuss whether something less than eligibility for chapter 11 relief would suffice to permit ancillary relief. Since any eligible chapter 11 debtor must first be eligible for title 11 relief under section 109(a), *Angulo* cannot properly be read to require the 304 petitioner to demonstrate the debtor's eligibility for chapter 11 relief. Instead it should be read to require a showing under section 109(a), which provides:

Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

Subdivision (b) of section 109 read together with subdivision (d) specifically excludes from chapter 7 and 11 relief "a foreign insurance company ... engaged in such business in the United States." The exclusion was included because a foreign insurance company engaged in such business in the United States is subject to our regulatory laws and should therefore not be liquidated in a bankruptcy court.[10] House Report 95–595, 95th Cong., 1st Sess. 318–19 (1977); *see* Senate Report No. 95–989, 95th Cong., 20 Sess. 31 (1978), U.S. Code Cong. & Admin.News 1978, 5817, 6275, 6276. There is nothing in section 109 which implicates the foreign insurance company restriction in a 304 case. And, indeed, since a 304 case is one which does not administer an estate as such but simply aids a foreign bankruptcy, there is little reason to exclude a debtor ineligible for chapter 11 relief from being the subject of a case under section 304. Collier is in accord with this view, stating:

> Section 109 may be seen as being comprised of three basis segments. Subsection (a) establishes the criteria which must be met for an entity to be a debtor under title 11 generally. This is the only provision dealing with who may be a debtor in a case ancillary to foreign proceeding under section 304.

2 Collier, *Bankruptcy*, ¶ 109.01 at 109–4 (15th ed. 1985). Because here, Universal concedes that it has a place of business in the United States, Gee's petition has met the threshold eligibility requirements, even if Universal has no property here.[11] *See* Universal's chapter 11 petition at ¶ 2.

**10.** The New York State Superintendent of Insurance in an affidavit filed with this court reported that his investigation of Universal was at too early a stage for him to determine whether Universal was subject to New York's regulatory liquidation; in any event, he supported Gee's 304 petition.

**11.** Gee pleaded in his petition that he believes Universal has property here. Both Gee and Universal state that Universal through its management has copies of certain books and records here which alone are sufficient to constitute "property" such that the debtor eligibility requirements of § 109(a) are fulfilled.

### C.

■ Universal's argument, unsupported by any authority, that the filing of its chapter 11 petition automatically superseded the 304 case holds no sway with this court. For were Universal correct, the power afforded to this court under section 305 to dismiss a bankruptcy case in the face of a pending foreign proceeding if the factors specified in section 304(c) warrant that dismissal would be rendered meaningless. Every 304 case could be defeated without the intervention of the court by the simple expedient of the filing of a chapter 11 case. This is not to say that the existence of a foreign insolvency proceeding precludes the filing of a chapter 11 case in the United States, *In re Aktiebolaget Kreuger & Toll,* 20 F.Supp. 964 (S.D.N.Y.1937), *aff'd,* 96 F.2d 768 (2d Cir.1938). But nothing proffered to this court impels it to conclude that the filing of such a chapter 11 petition sounds the death knell for a 304 case.[12]

### II.

Having established that the 304 case is jurisdictionally sound and has survived the filing of a competing chapter 11 petition, it next befalls this court to determine whether to grant the relief which Gee seeks under section 304. Guided by what will "best assure an economical and expeditious administration of [the] estate," 11 U.S.C. § 304(c), this court must evaluate the first five of the six factors set forth in section 304(c).

**12.** There is a serious question whether, under the law of the Cayman Islands, Universal retained the power to file a chapter 11 petition in this court. Clearly, it had the right to contest its liquidation and Gee's appointment, *see Union Occident Insurance Co. Ltd.* (1972) 1 WLR 640, and Gee so concedes, but the power to directly contest the liquidation on appeal is not necessarily tantamount to the power to collaterally contest it in the courts of another country. We need not reach that question, however, since it is this court's construction of section 305 that even if the chapter 11 filing was permissible, the chapter 11 case can still be dismissed if the factors of section 304(c) so warrant.

Judicial application of these standards is sparse; the pioneer cases dealing with section 304 related to jurisdictional questions. *See, e.g., Stuppel,* 17 B.R. 413; *Angulo,* 29 B.R. 417; *Trakman,* 33 B.R. 780. While a few courts have grappled with particular 304(c) factors, *see In re Toga Manufacturing,* 28 B.R. 165; *In re Egeria Societa Per Azioni di Navigazione,* 26 B.R. 494, 9 B.C.D. 1312 (Bankr.E.D.Va.1983); *In re Lineas Areas De Nicaragua* 13 B.R. 779 (Bankr.S.D.Fla.1981), the only decision containing a comprehensive analysis of all the 304(c) factors, *In re Culmer,* 25 B.R. 621, 7 C.B.C.2d 867, granted relief under a 304 petition which was filed ancillary to a Bahamian liquidation.

Only the other day, the Second Circuit, noting that "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities," *Cunard Steamship Company Limited v. Salen Reefer Services AB,* 773 F.2d 452, 458 (2d Cir. September 19, 1985), and that "the modern trend has been toward a more flexible approach which allows the assets to be distributed equitably in the foreign proceeding," *id.* at 458, held that "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign tribunal." *Id.* at 458–59. If creditors of a foreign bankrupt, including Americans, may be required under principles of comity to have their claims adjudicated by a foreign tribunal, then so, too, may the shareholders, for here, of course, it is Universal's shareholders which the chapter 11 case concededly seeks to benefit.

In addressing the 304(c) factors, counsel for the debtor asserts that subsections (1) through (4) will be satisfied through administration of the chapter 11 case. This argument distorts the application of section 304(c); its standards are used to determine if relief should be granted under the *304 petition,* not the chapter 11 case. To this end, the debtor asserts that comity should not be accorded the Grand Court's order and that the 304 petition will not protect all

interested parties and interest holders. (Memo of Law in Opp. to 304 Petition at 7–9). Presumably, counsel is addressing subsections (c)(5) and (1) of section 304, respectively; notwithstanding, this court will speak to all the relevant factors in section 304(c).

■ Although comity is only one of six factors to be considered in determining whether to grant relief, it often will be the most significant, as here, where it serves as the crux of debtor's argument. The United States Supreme Court has defined comity as:

> Neither a matter of absolute obligation on the one hand, nor a mere courtesy or goodwill, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated. *Cunard Steamship, supra,* at 457; *see Hilton v. Guyot,* 159 U.S. at 202–03, 16 S.Ct. at 158; *Clarkson Co. v. Shaheen,* 544 F.2d 624, 629 (2d Cir. 1976); *Kenner Products Co. v. Societe Fonciere et Financiere Agache-Willot,* 532 F.Supp. 478, 479 (S.D.N.Y.1982). Particularly where the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed. *Clarkson Co., supra,* 544 F.2d at 630.

■ Interestingly, in this case, the debtor's crucial argument does not raise concerns regarding the substantive bankruptcy laws of the Cayman Islands. Rather, the debtor attacks the procedural circumstances under which the Grand Court ordered that Universal be wound up and Gee

appointed. Stripping the debtor's argument bare, the debtor seeks dismissal of the 304 petition and recognition of its chapter 11 petition because it believes that Universal was improperly subjected to winding up proceedings and that Gee will not fairly distribute the estate's assets.[13] This argument is tantamount to an attempt by the debtor to appeal the Grand Court's orders, an avenue which, significantly, was never exhausted by the debtor.

The Companies Law under which Universal is being liquidated is derived from the British Companies Act and is similar to our Bankruptcy Code. Particularly important is section 97 of the Companies Law which states:

> 97. Upon hearing the petition, the court may dismiss the same with or without costs, may adjourn the hearing conditionally or unconditionally and may make any interim or any other order that it thinks just....

Thus it is clear that the laws provided Universal with the opportunity to contest the petition or request an adjournment. For comity to be extended, it is necessary only that the foreign court abide by fundamental standards of procedural fairness. *Cunard Steamship, supra,* at 457. And here, Universal has shown nothing to this court to persuade it that fundamental standards of fairness were abridged by the Cayman Islands tribunal when it ordered Universal wound up. Universal did not request an adjournment of the judge hearing its case; in the absence of such a request, Universal's argument that the Grand Court should have *sua sponte* adjourned the hearing is nothing short of ludicrous. Similarly devoid of merit is Universal's argument that *if it had tried,* it would have been unable to obtain local counsel or counsel able to be admitted *pro haec vice.* Neither did Universal make any efforts in this regard nor did it inform the

Grand Court judge that it was seeking substitute counsel.

Not only was Universal vested with the right to contest entry of the winding-up order before the trial court, but it was vested with the right to appeal that court's determination. Section 128(2) of the Companies Law provides:

> Appeals from any order or decision made or given in the matter of a winding up of a company before the Judge of the Grand Court may be made to the Court of Appeal, Jamaica, in the same manner, and subject to the same rules and conditions as an appeal from any order or decision of the Court.

Universal's attempt to raise the spectre of an abridgement of fundamental notions of due process comes too late, for Universal truly quarrels not with the *system* utilized in the Cayman Islands, but with the result achieved. Had Universal been as aggrieved by the Grand Court's ruling as it now claims to be, it should have appealed.[14]

In any event, no clear and convincing evidence of fraud has been presented to this court such as would justify collateral attack of the Grand Court's order. As the Second Circuit explained in *Clarkson Co. Ltd. v. Shaheen, supra,* 544 F.2d at 631:

> A foreign judgment may not be collaterally attacked "upon the mere assertion of the party that the judgment was erroneous in law or in fact," *Hilton v. Guyot, supra,* 159 U.S. at 203, 16 S.Ct. at 158, much less upon a mere assertion of fraud. Clear and convincing evidence of fraud is required in order successfully to attack a foreign judgment, just as such proof is necessary before a court will set aside its own judgment. (Certain citations omitted)

In general, the substantive provisions of the Companies Law provide a comprehensive procedure for the orderly and eq-

---

**13.** This is because the debtor contends Gee has recognized or will recognize invalid creditors' claims.

**14.** This is in harmony with the concept of res judicata where if the party had the opportunity to address the issue in the foreign proceeding, a collateral attack in the United States would be barred. *See Fleeger v. Clarkson Co.,* 86 F.R.D. 388 (N.D.Tex.1980) (dictum) *as cited in* 2 Collier on Bankruptcy, *supra* at 304-20.

uitable distribution of the debtor's assets among its creditors. The issuance of the order for winding up stays or enjoins the continuation or commencement of suits, actions and proceedings against the debtor without leave of the Grand Court. (Companies Law § 98). Provisions exist to void attachments, executions and "fraudulent preferences" (Companies Law §§ 164 & 165). The court is required to cause the assets to be marshalled for liquidation. (Companies Law § 109). Creditors' meetings may be held to ascertain the creditors' wishes and consideration is given to the value of their debts and to the voting rights of the contributories.[15] (Companies Law § 149).

Specific provisions govern the functions and powers of the liquidator who is appointed by the court for the purposes of winding up the company (Companies Law §§ 103–108). As official liquidator, Gee may, among other powers and with the sanction of the Grand Court, commence and or defend any litigation, sell Universal's property, execute contracts on Universal's behalf, borrow money, sell real and personal property and carry on the debtor's business as is necessary for the beneficial winding up of the company. (Companies Law § 106). Gee is under an affirmative duty to, among other things, secure books and records, ascertain the company's liabilities, examine creditors' claims and, particularly importantly, distribute any surplus assets to the contributories. (Companies Law §§ 105, 111, 118, 119 and 124; *see* Affid. of Andrew Jones at ¶ 18). It is critical to note that liquidators are fiduciar-

ies subject to the control of the Grand Court; they can be appointed, *removed,* and replaced by the Grand Court and are accountable to that court. *Re Contract Corporation Limited* (1871) 7 L.R.Ch. Apps. 207, 211. (Companies Law §§ 103–105).[16]

In addition to arguing that the winding up order was improperly entered, Universal urges that comity should be denied because Gee is, in Universal's opinion which is unsupported by anything more than conjecture, biased towards those creditors who sought his appointment. But Universal's argument flies in the face of our own Bankruptcy Code which provides that the creditors may elect the bankruptcy trustee. No more should a trustee appointed by a foreign tribunal at the behest of creditors be presumed a biased scoundrel blind to his fiduciary obligations to contributories than should his American counterpart elected by the creditors. Moreover, Universal did not contest Gee's appointment at either the trial or appellate levels.

Turning to subsections (1) and (2) of section 304(c), a review of the Companies Law does not reveal provisions which would prejudice United States claimants or create unjust treatment of the estate's creditors. Creditors may submit proofs of claim until the bar date which is set by the Court; the Companies Law does not appear to mandate physical appearance by the creditor.[17] (Companies Law §§ 118 and 158). There is no statutory provision which prefers the claims of Cayman Islands citizens or residents or disfavors the claims of non-Cayman Islands citizens or residents.[18]

---

**15.** The term contributory is defined in the Companies Law as "[E]very person liable to contribute to the assets of a company in the event of its being wound up under this Law; and for the purpose of any proceeding for determining the persons who are to be deemed contributories, and of any proceedings prior to the final determination of such persons, includes any person alleged to be a contributory" Companies Law § 86.

**16.** Section 104(1) of the Companies Law reads in part:

"Any official liquidator may resign or be removed by the Grand Court on due cause shown...."

**17.** It is recognized however that the creditor would likely have to appear if the claim is challenged and cannot be compromised.

**18.** Interestingly, enough, however, protecting the United States claim holders is not an argument raised by the debtor. This is probably because only two of the debtor's fifteen largest unsecured creditors are located in the United States and the claim of each of these creditors are disputed by the debtor. (*See* List of Creditors Holding Largest—Unsecured Claims an-

Section 304(c)(3) is also satisfied by virtue of section 165 of the Companies Law which voids "fraudulent preferences."

Finally, coming to section 304(c)(4), which directs this court to consider whether the distribution of proceeds of the estate will be substantially in accordance with that of the Bankruptcy Code, the court concludes that the Companies Law is generally in harmony with the Code. Rates, taxes, assessments and certain wages are accorded priority; other claims are paid in full or compromised, all of which is done with the sanction of the court (Companies Law §§ 159 and 160).[19]

After reviewing the Companies Law, this court finds it appropriate to grant relief under section 304 in an effort to best assure an economical and expeditious administration of Universal's estate. It is not necessary that the Companies Law be a carbon copy of the Bankruptcy Code; rather, it must be of a nature that it is not repugnant to the American laws and policies—and clearly it is not. *Culmer*, 25 B.R. 621, 9 B.C.D. at 1289; Gallagher & Hartje, *supra* at 12. Insofar as this court for the reasons set forth above is satisfied that the foreign liquidation meets the criteria set forth in section 304(c), the court should not sit as an appellate court over the foreign proceedings. *See* Gallagher & Hartje, *supra* at 9. Universal's argument that Gee will not fairly liquidate Universal should properly be placed before the Grand Court and not this forum. *See Daniels v. Powell*, 604 F.Supp. 689, 694 (N.D.Ill.1985). In any event, Universal's support for this position is speculative at best. Universal's position is also significantly undermined by Gee's current inability to obtain all of Universal's books and records which has inhibited his review of the filed claims. If Universal's argument as to Gee's bias is ultimately borne out by events, Universal may

seek his removal for good cause shown. (Companies Law § 104(1)). However, dismissal of Gee's 304 petition is not a viable avenue for his ouster.

### III.

■ Putting aside now the issue of granting relief to Gee, it remains only to determine whether dismissal of the chapter 11 petition is appropriate under section 305.

The predecessor statute to section 305 directed the court to consider "all relevant circumstances" in determining whether to withhold or suspend jurisdiction when a debtor was adjudged bankrupt in a foreign jurisdiction. Bankruptcy Act § 2a(22).[20] Under the Code, the discretion of the court is limited by the 304(c) guidelines and the umbrella phrase "other relevant circumstances" has been eliminated. *See* Honsberger, *supra* at 657. The Second Circuit in construing section 2a(22) of the Act, stated that:

> It was designed to avoid needless duplication of effort by courts and creditors in those cases where an ancillary proceeding in this country could be coordinated with or entirely dismissed in favor of a domiciliary proceeding abroad.... In exercising its discretion, the district court is to guard against forcing American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country's policy of equality.

*Banque de Financement S.A. v. First National Bank of Boston*, 568 F.2d 911, 921 (2d Cir.1977) *as cited in Honsberger, supra* at 658.

The debtor correctly synthesizes the crux of our case when he states "[t]he real issue in this case is whether this court or the Cayman Islands Court ... will administer millions of dollars of assets and supervise

---

nexed as Exhibit A to the Amendment to Universal's chapter 11 petition). Additionally, the sparse creditor representation appearing in these proceedings in support of the debtor's motion to dismiss has not even been on behalf of American creditors.

**19.** The shortfall in an estate is made up by requiring the contributories to pay the remain-

ing liabilities. (Companies Law §§ 112 and 113).

**20.** Subsequently, former Bankruptcy Rule 119 was enacted, essentially incorporating section 2a(22). The changes in rule 119 are not relevant here.

payment to creditors." (*See* Debtor's Memo. in Opp. To Motion to Dismiss or Suspend and In Reply to Opp. to Motion for Preliminary Injunction at p. 14). The debtor also correctly points out that in the circumstances of this case, a chapter 11 "reorganization" would be wholly incompatible with the 304 case. Continuation of the chapter 11 case is clearly not in keeping with the spirit of section 305 which is designed in part to avoid duplication of effort by the courts and creditors. *See Banque de Financement S.A.*, 568 F.2d at 921. This court holds not that an existing foreign liquidation precludes the filing of a chapter 11 petition but rather that where, as here, the court is recognizing a case filed ancillary to that foreign proceeding as a means to effectively deal with American assets and creditors, if any, a competing chapter 11 petition should be dismissed under section 305.[21]

Gee also moves to dismiss Universal's chapter 11 petition for "cause" pursuant to section 1112(b) and because Universal is in his opinion an ineligible debtor under section 109(b)(3). With respect to the former, Gee argues that the filing of a chapter 11 petition for the expressed purpose of thwarting a foreign liquidation proceeding coupled with an intention only to liquidate and not resume operations constitutes bad faith warranting dismissal of the petition. While there is considerable appeal to this argument, given this court's conclusion that the statutory scheme warrants dismissal under section 305, it is unnecessary to reach the issue, resolution of which would necessarily entail determining whether a case filed by a debtor solely to liquidate is properly in chapter 11. That question is better left for another court in another case on another day. Similarly, it is unnecessary to determine whether Universal, a foreign insurance company which *did* engage in the insurance business in the United States is "a foreign insurance company ... engaged in such business in the United States" such that it is ineligible for chapter 11 relief.

Accordingly, SETTLE ORDER in conformity with this opinion:

(i) dismissing Universal's chapter 11 petition;

(ii) denying Universal's motion to dismiss Gee's 304 petition;

(iii) denying Universal's motion for a preliminary injunction, turnover and an accounting; and

(iv) granting Gee's petition for ancillary relief under section 304, specifically:

(a) directing that discovery of persons and entities as may be found within the Southern District of New York and who have knowledge concerning the acts, conduct, property, liabilities, or financial condition of Universal or as to any matter which may affect the administration of Universal's estate in the Grand Court of the Cayman Islands may proceed;

(b) directing all persons and entities within the Southern District of New York which now have or may hereafter obtain books and records belonging to Universal or its liquidator, as liquidator, to forthwith turn over all such books and records to Gee;

(c) preliminarily enjoining Shah, Reddy and their agents, servants, employees, and attorneys, and other persons in active participation with them from disposing, dispersing, secreting, or removing from this district any property of Universal or its liquidator, as liquidator;

(d) preliminarily enjoining Shah, Reddy and Binder Dijker Otte & Co. ("Binder") and their agents, servants, employees, and attorneys, and other persons in active participation with them from de-

---

**21.** This court finds unpersuasive the debtor's argument that we should not abstain or dismiss under section 305 because such a decision would, by the literal language of 305(c) be unappealable. We dismiss under section 305 with a full appreciation that this vehicle for dismissal is one to be used sparingly. Failure to dismiss under 305 when circumstances render such dismissal appropriate because of unappealability would effectively obviate section 305. At least one court has been sympathetic to debtor's assertion and held 305(c) to be unconstitutional to the extent it prohibits appellate review of constitutional or jurisdictional issues. *See Farmer v. First Virginia Bank*, 22 B.R. 488, 7 C.B.C.2d 284 (E.D.Va.1982); *contra In re Covey*, 650 F.2d 877, 880 (7th Cir.1981); *In re Cash Currency Exchange*, 762 F.2d 542 (7th Cir.1985).

stroying, altering, secreting, or removing from this district any books or records of Universal or its liquidator, as liquidator, or relating to the property, business or liabilities of Universal;

(e) requiring Shah, Reddy and their agents, servants, employees and attorneys, and other persons in active participation with them to turn over and deliver into the possession and control of Gee all property of Universal to be held in an interest bearing account in this district pending final disposition of this proceeding;

(f) requiring Shah, Reddy and Binder and their agents, servants, employees and attorneys and other persons in active participation with them and all other persons within the Southern District of New York who are found to have possession of property of Universal or to which Universal or Gee, as liquidator, is entitled to turn over and deliver into the possession and control of Gee all such property; and

(g) retaining the jurisdiction of this court for the purpose of enforcing its judgment and granting such other relief as may become appropriate.