In re EMPRESA de TRANSPORTES AERO del PERU, S.A., Debtor.

Aerovias de Mexico, S.A. de C.V., et al., Appellants,

v.

James Feltman, Trustee, Appellee.

No. 01–610–CIV–JORDAN.

United States District Court, S.D. Florida, Miami Division.

June 26, 2001.

Thomas Lauria, Marcos Jimenez, Jodi E. Samuels, White & Case LLP, Miami, FL, for Appellants.

David Cimv, Nicole Testa Ligotti, Genovese Lichtman Joblove & Battista, P.A., Miami, FL, for Appellees.

#### AMENDED ORDER REMANDING CASE

JORDAN, District Judge.

The Bankruptcy Code permits a foreign representative to request the opening of a matter ancillary to a foreign insolvency proceeding. *See* 11 U.S.C. § 304. A petition under § 304 does not commence a "full" bankruptcy proceeding, but rather "an ancillary case in which a United States bankruptcy court is authorized to apply its processes to give effect to orders entered in a foreign insolvency proceeding." *In re Goerg,* 844 F.2d 1562, 1567 (11th Cir.1988).

In this § 304 appeal, Aerovias de Mexico, S.A. de C.V. and White & Case LLP

challenge the bankruptcy court's denial of their motion under Federal Rule of Civil Procedure 60(b), which sought to vacate the appointment of a trustee. The case raises difficult questions about the extent of a bankruptcy court's powers to fashion "appropriate relief" under § 304(b)(3), including whether the " 'maximum flexibility' " that Congress wanted such a court to have amounts to a so-called "blank check." *In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y.1982).

I do not reach these questions now. As explained below, it is at best unclear whether a duly authorized foreign representative is still prosecuting this § 304 proceeding, and I therefore have serious doubts about whether the bankruptcy court had subject-matter jurisdiction to enter the orders now challenged on appeal and whether such jurisdiction, if it existed before, exists now. Given the lack of a developed record on the status of the foreign representative, this matter is remanded to the bankruptcy court for findings of fact and conclusions of law, following an evidentiary hearing, on whether a foreign representative with standing has been maintaining this proceeding since its inception two years ago.

## I. Procedural History

This case began on April 21, 1999, when Aero Peru, a foreign debtor, filed a § 304 petition in the bankruptcy court [App. 797].[1] The petition was signed by Aero Peru's chief executive officer, Jaan Albrecht, who declared under penalty of perjury that he had been appointed as the representative of Aero Peru's estate in proceedings pending in the Peruvian Indecopi Comision de Salida del Mercado, and that he was Aero Peru's foreign representative as that term was defined by 11 U.S.C. § 101(24). According to Mr. Albrecht's declaration, Aero Peru wanted to "protect its assets located in the United States for distribution in accordance with the laws of the Republic of Peru" [App. 798–99]. Attached to the declaration were various documents in Spanish [App. 800–11]. Two weeks later, Aero Peru filed a motion for a temporary injunction, seeking to prevent or stay any actions against it [App. 813]. The motion for injunctive relief was signed by Aero Peru's counsel, Stuart Mermelstein, Esq.

### A. The Initial Hearings

The bankruptcy court issued a preliminary injunction on May 19, 1999, and scheduled a subsequent hearing on Aero Peru's request for permanent injunctive relief [App. 113]. At a hearing on June 2, 1999, Jeffrey Herman, Esq., appeared for Aero Peru. He informed the bankruptcy court that a restructuring plan involving Continental Airlines' infusion of capital was being considered in Peru, and provided some information as to how the new company was going to operate [App. 321–47]. The bankruptcy court held another hearing on June 17, 1999, at which Aero Peru's counsel indicated that the plan of reorganization was subject to a vote by Aero Peru's general creditors. Everyone at the hearing agreed that nothing should be done until the creditors had voted on the plan of reorganization [App. 348–55].

The next hearing took place on June 30, 1999. Aero Peru appeared through Mr. Herman and Raul del Solar, Esq., who was Aero Peru's general counsel in Lima. Mr. del Solar reported that talks in Peru were still underway and that the next shareholder meeting was scheduled for July 12, 1999. He also provided details about some of the reorganization proposals being considered. At the conclusion of the hearing, the bankruptcy court continued the re-

---

1. All record references are to the appendices filed by Aero Mexico and White & Case.

quest for permanent injunctive relief to a later date [App. 358–68].

By the time of the next hearing, on July 27, 1999, not much had changed. Mr. del Solar told the bankruptcy court that while Continental Airlines was no longer in the picture, several other reorganization plans were still under consideration. Mr. Mermelstein, on behalf of Aero Peru, requested additional funds for the preservation of United States assets. The Assistant U.S. Trustee, Robert Angueira, Esq., opposed the request, and argued that the motion for additional funds should have been filed in Peru. He noted that the § 304 proceeding was merely the "tail" of the proceeding that was pending in Peru, and objected to the request on the ground that United States assets should not be used in the absence of a definite plan of reorganization. In response, Mr. del Solar said that what Aero Peru really needed was someone in the United States to negotiate air traffic rights, because without such rights it might be forced into liquidation. The bankruptcy court deferred ruling on Aero Peru's request for funds, and instructed Mr. Mermelstein to discuss matters further with David Haber, Esq., who represented World Fuel, one of Aero Peru's creditors. Once again, the hearing on Aero Peru's request for permanent injunctive relief was postponed [App. 371–411].

### B. The Appointment of the Trustee

On August 25, 1999, the bankruptcy court held another hearing. Mr. Herman advised that it was unlikely that Aero Peru would be flying again, and that the creditors were meeting in Lima to convert the Peruvian proceeding from reorganization to liquidation. He also said that Aero Peru's general counsel—Mr. del Solar—had been unable to attend the hearing because of the developments in Peru. Mr. Herman indicated that Aero Peru proposed to send a letter to all United States creditors advising them of the process for filing claims in Peru. The bankruptcy court replied that it wanted to give those creditors an "opportunity to file claims [in the United States]," and based upon its "present judicial knowledge of the situation in Latin America in general, and Peru in particular," it was inclined to deal with the claims of United States creditors and then transmit the surplus funds to Peru [App. 865–69]. The bankruptcy court did not explain the underlying bases for its knowledge of the situation in Peru or Latin America.

After some discussion, the bankruptcy court suggested appointing an examiner or trustee to liquidate United States assets, pay the claims of United States creditors, and turn over any surplus funds to Peru.[2] The Assistant U.S. Trustee, Mr. Angueira, then explained that the normal protocol for such actions was accomplished through a Chapter 7 proceeding with a Chapter 7 trustee. The bankruptcy court invited the parties present at the hearing—Aero Peru, the Assistant U.S. Trustee, World Fuel, and the Internal Revenue Service—to see if they could agree on an order establishing a procedure. If they could not, the bankruptcy court would issue an order "establishing an independent fiduciary" to handle the liquidation. Mr. Herman responded that Aero Peru was not objecting to the establishment of a claims process in the United States, but wanted United States creditors to be aware of the procedure for filing claims in Peru [App. 870–75].[3]

---

**2.** Prior to this time, no one had suggested or moved for the appointment of a trustee.

**3.** The record does not reflect that the foreign representative ever sent Aero Peru's creditors the letter concerning the claims process in Peru.

Following this exchange, Mr. Haber, on behalf of World Fuel, moved for the appointment of a "liquidating Chapter 7 trustee," and the bankruptcy court adjourned the hearing so that the parties could discuss matters. When the hearing resumed later the same day, Mr. Herman announced (and Mr. Haber concurred) that the parties had reached an agreement to request the appointment of a special trustee due to a potential "aviation-type claim." When Mr. Angueira said that he assumed the trustee would be a Chapter 11 trustee, the bankruptcy court corrected him: "Well, it isn't a [Chapter] 11 trustee, but ... pursuant to [§ ] 105 ... the trustee will be appointed according to the terms that you all agree upon" [App. 875–80].

On September 3, 1999, the bankruptcy court entered an order directing the U.S. Trustee to appoint a trustee for the purpose of liquidating and distributing Aero Peru's "estate" in the United States [App. 419].[4] The trustee, according to the order, was to have the role, capacity, and duties as set forth in 11 U.S.C. §§ 323 and 1106, including investigating and pursuing claims or actions against shareholders or third parties. The trustee was ordered to distribute Aero Peru's "estate" in the United States and to send any excess funds to Aero Peru's administrator in the Peruvian insolvency proceedings. The U.S. Trustee was given oversight authority.

In an amended order dated September 21, 1999, the bankruptcy court approved the appointment of James Feltman, Esq., as trustee pursuant to 11 U.S.C. § 1104 [App. 422]. The order explained that the trustee had all the powers and duties of a trustee under 11 U.S.C. § 1106. The certificate of service attached to the order indicated that a copy was sent to Aero Mexico [App. 423].

## C. The Rule 60(B) Motion BY Aero Mexico AND White & Case

Following his appointment, the trustee requested that he be allowed to retain counsel and employ a collection agent [App. 425, 548]. The bankruptcy court approved those requests [App. 429, 548]. The trustee also filed various motions to sell property of the Aero Peru estate and settle claims [App. 430, 479, 493, 523]. These motions were likewise granted by the bankruptcy court [App. 435, 492, 549, 571]. Finally, the trustee moved to establish a bar date for filing proofs of claim [App. 753]. The court granted this motion as well, and set a bar date of October 31, 2000 [App. 770].

Beginning in March of 2000, the trustee, pursuant to Bankruptcy Rule 2004, began issuing subpoenas and noticing the depositions of various individuals and entities. For example, the trustee noticed the duces tecum depositions of the Aero Mexico and White & Case individuals most knowledgeable about a 1997 agreement between Aero Peru and Aero Mexico [App. 507, 550, 572]. In June of 2000, the trustee cancelled various depositions, including the one of Aero Mexico's corporate representative, and indicated that they would be rescheduled at a convenient time [App. 637].

On October 20, 2000, Aero Mexico and White & Case filed a motion, pursuant to Federal Rule of Civil Procedure 60(b), to set aside the orders appointing the trustee and to quash the Rule 2004 subpoenas [App. 773]. First, they argued that a bankruptcy court in a § 304 proceeding lacked jurisdiction to appoint a Chapter 11 trustee or convert the proceeding into a

---

4. An ancillary § 304 proceeding "does not create an estate under [11 U.S.C. § ] 541[.]"

L. KING, 2 COLLIER ON BANKRUPTCY ¶ 304.03[1] (15th Rev. Ed.2001).

Chapter 7 liquidation,[5] and that the orders were therefore void under Rule 60(b)(4). Second, they asserted that they had been denied due process with respect to the appointment of the trustee because they had not been given proper notice. They noted that the August 25, 1999, hearing that culminated in the appointment of the trustee had been noticed only as a hearing on Aero Peru's request for permanent injunctive relief against actions by creditors. Because of the lack of notice, the orders appointing the trustee were void under Rule 60(b)(4). Third, they relied on Rule 60(b)(6) and asked the bankruptcy court to set aside the appointment of the trustee because the appointment was extraordinary and contrary to the Bankruptcy Code. Fourth, they challenged the subpoenas issued by the trustee as unauthorized and requested that they be quashed. They also raised attorney-client privilege and work product objections to the subpoenas.

On December 14, 2000, Aero Mexico and White & Case took the deposition of Mr. Mermelstein, one of the attorneys for Aero Peru's foreign representative [App. 1038]. The trustee, through counsel, was present at the deposition. Mr. Mermelstein testified that he did not remember the last time he had spoken to Mr. Albrecht, the foreign representative, though he had talked to Aero Peru's counsel following the appointment of the trustee [id. at 7–8]; that since the appointment of the trustee, his firm had no "role to play" in the § 304 proceeding [id. at 9]; that he did not know the status of the Peruvian proceedings [id. at 18]; that "as a practical matter there was little, if any, role, for us [i.e., the foreign representative] to play in the case once the trustee was appointed" [id. at 29];

and that after the trustee was appointed he had not appeared or taken a position on any substantive matter on behalf of the foreign representative [id. at 34–36]. Mr. Mermelstein refused to answer, on attorney-client privilege grounds, whether he had ever discussed the appointment of the trustee with Mr. Albrecht, the foreign representative [id. at 29].

The week after Mr. Mermelstein's deposition, the trustee filed a memorandum opposing the Rule 60(b) motion [App. 972]. The trustee explained that the appointment was not only necessary, it was permitted by § 304(b) and cases like In re Lineas Areas de Nicaragua, S.A., 13 B.R. 779 (Bankr.S.D.Fla.1981). The trustee argued that once reorganization efforts in Peru failed, "there was nothing further for the foreign representative [Mr. Albrecht] to do," and represented that the foreign representative had "effectively resigned pending the appointment of an administrator to liquidate the Peruvian estate" [App. 979]. Despite repeatedly stating that the foreign representative had effectively resigned at the hearing on August 25, 1999, the trustee nevertheless asserted that the foreign representative had agreed to the appointment of an independent fiduciary at that same hearing [App. 979 & n. 8]. With respect to the alleged lack of notice, the trustee noted that Aero Mexico had been served with a copy of appointment order [App. 975 n. 2], and maintained that Aero Mexico and White & Case were not entitled to prior notice because they were not adversely affected by the appointment, which merely impacted the general administration of the case [App. 980–81].

Aero Mexico and White & Case submitted a reply to the trustee's memorandum, and attached a copy of Mr. Mermelstein's

**5.** At a hearing on December 9, 1999, concerning the fee request of Aero Peru's counsel, the trustee told the bankruptcy court that "what we are in right now would be akin to a Chapter 7 proceeding where there is a trustee liquidating" [App. 1063].

deposition [App. 1012]. They maintained that the trustee had improperly replaced the foreign representative. They also repeated their arguments that the bankruptcy court had exceeded its § 304 jurisdiction by appointing a Chapter 11 trustee and converting the proceedings into a Chapter 7 liquidation.

The foreign representative, Mr. Albrecht, did not file anything in response to the Rule 60(b) motion or the trustee's memorandum.

### D. THE RULE 60(B) HEARINGS

The bankruptcy court held a hearing on the Rule 60(b) motion on December 28, 2000, and heard from the parties concerning the status of the foreign representative and its authority for appointing the trustee [App. 1082]. Aero Mexico and White & Case pointed out that the trustee had stated in his memorandum that the foreign representative had effectively resigned, thereby indicating that there was no longer a foreign representative involved in the § 304 proceeding [App. 1087]. They conceded that there was no evidence in the record concerning the resignation, but repeated that according to the trustee the foreign representative was out of the picture: "There is no supervision whatsoever coming out of Peru. The parties do not know what is going on in Peru and . . . therefore this is being operated no longer in aid of a foreign proceeding under [§ ] 304, but is being run as a Chapter 7 by a Chapter 7 trustee" [App. 1096]. In response, the trustee seemed to agree with this factual characterization (though not with its legal implication): "An administrator was to be appointed in Peru to liquidate the Peruvian debtor [Aero Peru]. There was nothing further for this foreign representative to do here. So the foreign representative was effectively resigning pending the appointment of a trustee. . . . [The foreign representative] was effectively resigning prior to [the appointment of the trustee]" [App. 1099].

Mr. Mermelstein, counsel for Aero Peru's foreign representative, did not assure the bankruptcy court that the foreign representative agreed with the appointment of a trustee. Instead, he said that at the time of the August 25, 1999, hearing, the Peruvian proceeding "had no plan" and "had no future," and asserted that no one in Peru was complaining about the procedure that had been set up in the United States [App. 1115–16]. Finally, World Fuel, through counsel, suggested that the foreign representative was not present because he was not being paid [App. 1118].

The bankruptcy court, though noting that Mr. Mermelstein had not been in contact with the foreign representative, and that the foreign representative had not affirmatively agreed to the appointment of the trustee, concluded that the foreign representative had not objected in any way to the appointment [App. 1136]. Insofar as the merits of the Rule 60(b) motion were concerned, the bankruptcy court ruled that the motion was untimely, that the trustee was properly appointed pursuant to § 304(b)(3), that the appointment did not convert the § 304 proceeding into a Chapter 7 or Chapter 11 proceeding, and that the appointment did not run afoul of the Eleventh Circuit's decision in *In re Goerg* [App. 1135–38].

In a subsequent written order, the bankruptcy court explained that while the order appointing the trustee "could have been more artfully drafted" to reflect that the appointment was made pursuant to §§ 105 and 304, the transcript of the August 25, 1999, hearing made it clear that the trustee was not being appointed pursuant to Chapter 7 or Chapter 11. The bankruptcy court also noted that the foreign representative had supported the appointment of the trustee. Once again the court took

judicial notice that the "Peruvian legal system does not provide adequate safeguards as does the United States bankruptcy system" [App. 1145–46].

Aero Mexico and White & Case timely appealed from the order denying their Rule 60(b) motion. In their brief, they challenge the appointment of the trustee—whom they view as a Chapter 11 trustee—and maintain that the court improperly converted the § 304 proceeding into a Chapter 7 case. They also assert that the bankruptcy court erred, under Federal Rule of Evidence 201, by taking judicial notice of the purported deficiencies of the Peruvian legal system in the absence of any evidence on that matter.

### E. Subsequent Developments in the Bankruptcy Court

On March 21, 2001, following the denial of the Rule 60(b) motion, the trustee filed a counterclaim and complaint against Aero Mexico and White & Case [Supp.App. 5]. The complaint seeks avoidance of preferential and fraudulent transfers, and asserts a claim for breach of fiduciary duty.

The trustee also filed a motion seeking to lift the stay against actions by creditors. The trustee told the bankruptcy court that if an involuntary proceeding is begun, then all jurisdictional issues relating to Aero Peru will be rendered moot. That motion was pending as of the date of oral argument in this appeal, and any ruling has been stayed pending the issuance of this opinion.

At a hearing on their motion for a stay pending appeal, Aero Mexico and White & Case again argued that subject matter jurisdiction was lacking because there was no longer a foreign representative in place [Supp.App. 192–93]. When asked by the bankruptcy court who the foreign representative was, the trustee responded with this answer: "It was Mr. Jaan Albrecht, but we understand that Mr. Albrecht

wasn't being paid anymore, and this is all on the record" [Supp.App. 201].

### F. The Oral Argument

At oral argument on June 7, 2001, Aero Mexico and White & Case repeated their contention that due to the lack of a foreign representative, the bankruptcy court lacked subject matter jurisdiction to appoint a trustee. In their view, the record is so devoid of any evidence concerning the presence of foreign representative that the order appointing the trustee should be set aside without any remand.

The trustee, on the other hand, argued that there were no jurisdictional problems with the appointment because as of August 25, 1999, there was a proceeding pending in Peru and a foreign representative who had filed the § 304 petition. The trustee acknowledged, however, that there was "no proof whatsoever one way or the other" as to whether a foreign representative was overseeing the § 304 proceeding and noted that there had been a "change of circumstances" since that 1999 hearing. Although the trustee maintained that there was always a foreign representative in place, he conceded that there was no evidence of that on the record, and at times seemed unsure of whether there is currently a foreign representative.

### II. Discussion

■ The bankruptcy court's order denying the Rule 60(b) motion filed by Aero Mexico and White & Case is an interlocutory decree, as it does not conclude the § 304 proceeding or the litigation between the parties to this appeal. *See generally Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *In re Kutner*, 656 F.2d 1107, 1111 (5th Cir.1981). *Cf. In re Delta Services Industries*, 782 F.2d 1267, 1269–71 (5th Cir.1986) (orders in Chapter 7 liquidation proceeding appointing interim trustee and appointing

counsel for trustee were interlocutory in nature). Although non-final bankruptcy orders may be appealed to district courts pursuant to 28 U.S.C. § 158(a), such appeals cannot be taken as of right.

■ "[D]istrict courts have come to the consensus that review is proper only where the circumstances surrounding the bankruptcy court's interlocutory order are similar to those surrounding an appealable order of a district court under 28 U.S.C. § 1292(b)." *Gouveia v. I.R.S.*, 228 B.R. 412, 413 (N.D.Ind.1998). In order to grant leave to appeal in this case, I must conclude that the order denying Rule 60(b) relief involves a controlling question of law as to which there exists a substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the case. *See, e.g., In re Ichinose*, 946 F.2d 1169, 1176–77 (5th Cir.1991); *Gouveia*, 228 B.R. at 413; *North Fork Bank v. Abelson*, 207 B.R. 382, 387 (E.D.N.Y.1997); *In re Delta Petroleum (P.R.) Ltd.*, 193 B.R. 99, 106 n. 15 (D.P.R.1996). I believe that this standard is satisfied here. As explained below, the bankruptcy court's refusal to vacate the order appointing the trustee, in light of this record, involves a controlling question of law as to which there exists a substantial ground for difference of opinion. Furthermore, because the trustee—without any apparent input or participation by the foreign representative—is going forward with claims against creditors and other entities, and has asked that the stay against actions by creditors be lifted, an immediate appeal will likely advance the ultimate disposition of the case. I therefore treat the notice of appeal as a motion for leave to file an interlocutory appeal, *see In re Martech USA, Inc.*, 188 B.R. 847, 850 (9th Cir. BAP 1995), and grant Aero Mexico and White & Case leave to appeal.

### A. THE CONTINUING JUDICIAL DUTY TO EXAMINE SUBJECT-MATTER JURISDICTION

■ One of the reasons the bankruptcy court gave for denying the Rule 60(b) motion was that it had been untimely filed. Insofar as Aero Mexico and White & Case challenged subject-matter jurisdiction, however, their motion was not procedurally barred. "An objection to the adjudicatory power of a tribunal may generally be raised for the first time at any stage of the litigation," *Gosa v. Mayden*, 413 U.S. 665, 707, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) (Marshall, J., dissenting) (collecting cases), and in the absence of such an objection "it is the duty of the court to determine on its own motion whether it has jurisdiction of any case before it." *In re Kutner*, 656 F.2d at 1110. Indeed, even a federal court sitting in an appellate capacity "has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower court[ ] in a cause under review, even though the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks omitted).

### B. THE ROLE OF THE FOREIGN REPRESENTATIVE IN A § 304 PROCEEDING

Whatever the scope of the bankruptcy court's authority to fashion appropriate relief in a § 304 proceeding, it is undisputed that such a proceeding may only be instituted by a duly authorized foreign representative, *i.e.*, a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C. § 101(24). The text of § 304(a)—"a case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative"—makes that abun-

dantly clear. *See, e.g., In re Bd. of Directors of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 585 (Bankr.S.D.N.Y.2001) ("[O]nly a foreign representative has standing to seek § 304 relief."); L. KING, 2 COLLIER on BANKRUPTCY ¶ 304.03[2] (15th Rev. Ed.2001) (§ 304 "vests the authority to commence a case in a foreign representative as opposed to a foreign debtor").

The § 304 petition in this case was filed by Mr. Albrecht, Aero Peru's then-authorized foreign representative. The bankruptcy court cannot be faulted for believing it had subject-matter jurisdiction at the hearing on August 25, 1999, as none of the parties informed the court at that time that the foreign representative had resigned or been displaced as a result of the collapse of the reorganization talks in Peru. But, as explained below, things had materially changed by late 2000, when the bankruptcy court considered the Rule 60(b) motion to vacate the appointment of the trustee.

### C. THE RECORD BEFORE THE BANKRUPTCY COURT

The memoranda and exhibits filed with the bankruptcy court in connection with the Rule 609(b) motion raised serious questions about whether the § 304 proceeding could continue in its current posture. For example, in his response to the Rule 60(b) motion, the trustee represented that the foreign representative had "effectively resigned" pending the appointment of an administrator to liquidate Aero Peru's estate in Peru and that the foreign representative had nothing further to do in the § 304 proceeding once the reorganization efforts in Peru failed. And in a deposition that was filed with the bankruptcy court, Mr. Mermelstein, one of the attorneys for the foreign representative, testified that he did not remember the last time he had spoken to Mr. Albrecht; that since the appointment of the trustee the foreign representative had little, if any, role to play in the § 304 proceeding; that he did not know the status of the proceedings in Peru; and that after the appointment of the trustee he had not appeared or taken a position on any substantive matter on behalf of the foreign representative. Tellingly, Mr. Mermelstein refused to disclose, on attorney-client privilege grounds, whether he had ever discussed the appointment of the trustee with Mr. Albrecht.

Matters did not improve by the time the bankruptcy court held a hearing on the Rule 60(b) motion. Aero Mexico and White & Case, though acknowledging that there was no record evidence that the foreign representative had resigned, directed the bankruptcy court to the trustee's concession that the foreign representative was out of the picture, and argued that the parties did not know the current status of the proceedings in Peru. The trustee repeated that an administrator was to be named to liquidate the Peruvian estate, and explained that the foreign representative, having nothing further "to do here," had effectively resigned pending the appointment of the trustee. Instead of assuring the bankruptcy court that the foreign representative was still in place and still involved, Mr. Mermelstein indicated that as of August 25, 1999, the Peruvian proceeding had "no plan" and "no future." All he could say was that no one in Peru objected to the appointment of the trustee. Finally, World Fuel suggested to the bankruptcy court that the foreign representative was not around because he had not been paid.

■ The bankruptcy court was therefore faced with an ancillary § 304 proceeding in which no one seemed to know what was going on in Peru, who (if anyone) was in charge of the proceedings in that country, or what those proceedings were; in

which no documentary information about the Peruvian proceedings had been submitted (or at least not translated into English); in which the foreign representative (who may have resigned or may have been replaced) had been silent for over a year and had apparently failed to provide creditors with notice of the claims process in Peru; and in which the appointed trustee had been taking all of the legal actions on behalf of Aero Peru. Under these circumstances, any reliance by the bankruptcy court on the foreign representative's purported acquiescence by silence was insufficient to establish continued jurisdiction under § 304. *Cf. In re Commodore Intern., Ltd.*, 242 B.R. 243, 248–50 (Bankr.S.D.N.Y. 1999) (dismissing preference and fraudulent transfer avoidance proceeding brought by unsecured creditors' committee for lack of standing because Bahamian court had ruled that liquidators could not delegate to committee their authority to bring such an action on behalf of the debtors' estate). Because "only a foreign representative has standing to seek § 304 relief," *In re Hopewell,* 258 B.R. at 585, the bankruptcy court had a duty to inquire further and assure itself that it still had subject-matter jurisdiction. Like other federal courts, a bankruptcy court has a *"continuing* obligation to examine [its] subject-matter jurisdiction throughout the pendency of every matter before it." *In re Wolverine Radio Co.,* 930 F.2d 1132, 1137 (6th Cir.1991) (emphasis added). *See generally Bishop v. Reno,* 210 F.3d 1295, 1298 (11th Cir.2000) ("Federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal quotation marks and citations omitted).

I am not prepared to say, on this undeveloped record, that the bankruptcy court lacked (or at some point lost) subject-matter jurisdiction over this § 304 proceeding. There is simply insufficient information from which to decide the jurisdictional question. The case is therefore remanded to the bankruptcy court for an evidentiary hearing on the question of subject-matter jurisdiction. *Cf. Bischoff v. Osceola County,* 222 F.3d 874, 885 (11th Cir.2000) (remanding case to district court for an evidentiary hearing on whether plaintiffs had standing to sue). If the bankruptcy court deems it advisable, it can permit discovery on matters affecting subject-matter jurisdiction prior to the evidentiary hearing.

At the evidentiary hearing, the bankruptcy court should address the following matters. First, what happened in Peru when the reorganization efforts failed? What became of the "foreign proceeding" as that term is defined in 11 U.S.C. § 101(23)? Second, did Mr. Albrecht resign as the foreign representative of Aero Peru? If so, when and why? Was Mr. Albrecht replaced as the foreign representative by someone "duly elected"? If so, by whom, and what are his duties? Is the successor to Mr. Albrecht (assuming there is one) still acting as the foreign representative? Third, did the foreign representative (whoever it may have been) affirmatively consent to the appointment of the trustee? Fourth, why hasn't the foreign representative taken any substantive action in the case since the appointment of the trustee? Did the foreign representative ever send creditors the proposed letter outlining the claims process in Peru? These questions are not meant to be exhaustive, and the bankruptcy court may of course consider any other issues that go to the question of subject-matter jurisdiction.

In order to place matters in context, the bankruptcy court will likely need to consider evidence concerning the Peruvian legal system. After all, a § 304 proceeding is in

"aid of" a foreign proceeding, *In re Goerg,* 844 F.2d at 1568, and it is difficult to imagine how the bankruptcy court could examine the question of subject-matter jurisdiction without examining the proceedings abroad in light of Peruvian law. *Cf. In re Master Home Furniture Co.,* 261 B.R. 671 (Bankr.C.D.Cal.2001) (analyzing Taiwanese law to determine whether application for reorganization filed by debtor in Taiwan constituted a "foreign proceeding" under §§ 101(23) and 304). Any evidence of foreign law, it goes without saying, must be presented and considered in accordance with Federal Rule of Civil Procedure 44.1 ("Determination of Foreign Law"). *See generally Trinidad Foundry and Fabricating, Ltd. v. M/V K.A.S. Camilla,* 966 F.2d 613, 615 (11th Cir.1992) ("When analyzing foreign law, the district court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").[6]

■ The bankruptcy court may not, as it did earlier in this case, use Federal Rule of Evidence 201(b) to take judicial notice of Peruvian law, of the purported inability of the Peruvian legal system to provide adequate safeguards to Aero Peru's United States creditors, or of the general state of affairs in Peru or in Latin America, as these matters are not amenable to such notice. "[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process.... Courts can take notice of certain facts without formal proof but only where the fact in question is 'one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable to accurate and ready deter-

mination by resort to sources whose accuracy cannot be questioned.'" *Shahar v. Bowers,* 120 F.3d 211, 214 (11th Cir.1997) (*en banc*) (quoting Rule 201(b) and refusing to judicially notice unofficial conduct of litigant based upon newspaper reports and press releases). *See also Abdille v. Ashcroft,* 242 F.3d 477, 490 n. 10 (3d Cir.2001) (declining to take judicial notice of South African law); J. MCLAUGHLIN, 1 WEINSTEIN'S FEDERAL EVIDENCE ¶ 201.03[3] (2d ed.2000) ("[M]ost courts have held that Rule 201 does not apply to judicial notice of law.").

### III. CONCLUSION

The case is remanded to the bankruptcy court for entry of findings of fact and conclusions of law, following an evidentiary hearing, on the question of subject-matter jurisdiction. If possible, the bankruptcy court should issue its decision within sixty days. If that is not feasible, the bankruptcy court should enter an order explaining when it anticipates ruling. Once the bankruptcy court issues its order on subject-matter jurisdiction, the parties will have thirty days in which to supplement the record in this appeal and request a briefing schedule. In the meantime, I will retain jurisdiction over the appeal. *See United States v. Fidelity Capital Corp.,* 888 F.2d 1344, 1348–49 (11th Cir.1989).

With the exception of the trustee's interim fee application, which is currently pending before the bankruptcy court, all matters unrelated to the evidentiary hearing on subject-matter jurisdiction are stayed. The bankruptcy court may conduct further proceedings on the fee application, and may issue an order on the application whenever it is ready to do so. It may not,

---

**6.** A good starting point for the parties might be the translation of the Spanish-language

documents attached to the § 304 petition.

however, authorize the disbursement of any funds for the payment of fees until this appeal is concluded.

If the parties believe that other procedural matters should be exempted from the stay, they can file simultaneous memoranda of law requesting such relief by July 2, 2001. The parties shall not respond to the memoranda unless requested to do so.