**In re Petition of the BOARD OF DIRECTORS OF HOPEWELL INTERNATIONAL INSURANCE LTD., as Scheme Administrators of Hopewell International Insurance Ltd., Debtor, in Foreign Proceedings.**

**No. 98–45440(ALG).**

United States Bankruptcy Court, S.D. New York.

Feb. 9, 2001.

Chadbourne & Parke LLP (Howard Siefe, Marjorie L. Cohen, of counsel), New York City, for petitioner.

Cozen and O'Connor (Stephen A. Cozen, Richard M. Mackowsky, Neal D. Colton, of counsel), Philadelphia, PA, for Gold Medal Insurance Co.

Seward & Kissel LLP (Ronald L. Cohen, Charles M. Miller, of counsel), New York City, Zelle, Hofmann, Voelbel, Mason & Gette LLP (Lawrence Zelle, Lawrence T. Hofmann, Richard L. Voelbel, of counsel), Minneapolis, MN, General Mills, Inc.

## MEMORANDUM OF DECISION AND ORDER

ALLAN L. GROPPER, Bankruptcy Judge.

In 1998 the Board of Directors of Hopewell International Insurance Ltd. ("Hopewell"), acting as Scheme Administrators of Hopewell and as representatives of a debtor in a foreign proceeding, commenced a proceeding in this Court under § 304 of the Bankruptcy Code, 11 U.S.C. § 304. The § 304 proceeding sought, among other things, an injunction preventing Gold Medal Insurance Company ("Gold Medal") and all other creditors from commencing any arbitration or judicial proceedings or enforcing any arbitral awards against Hopewell or its property not permitted by its Bermuda Scheme of Arrangement (the

"Scheme") and granting comity to and enforcing an injunction preventing Gold Medal from commencing any action or proceeding or enforcing any arbitral award or judgment against Hopewell or any of its assets in the United States. Gold Medal is a subsidiary and captive insurance company of General Mills, Inc. ("General Mills"), and it has a claim of more than US$200 million against Hopewell as a consequence of a claim filed and judgment entered against it by General Mills. General Mills and Gold Medal strongly objected to the § 304 proceeding; the objections were in large part based on the fact that enforcement in the United States of the Bermuda Scheme of Arrangement would, as a practical matter, require Gold Medal to arbitrate its claim against Hopewell in Bermuda under Bermuda law rather than in Minnesota under local law.

After eight days of trial Judge Brozman of this Court sustained the § 304 petition and entered an order enjoining all scheme creditors, including Gold Medal, from commencing or continuing any actions or proceedings in the United States which would be in violation of the Scheme. See Opinion on Motion for Injunctive Relief Pursuant to 11 U.S.C. § 304, reported at *In re Board of Directors of Hopewell International Insurance, Ltd.,* 238 B.R. 25 (Bankr.S.D.N.Y.1999). An order was entered to that effect, reserving jurisdiction with respect to the "enforcement, amendment or modification of the order, and requests for any additional relief in this section 304 case and all adversary proceedings in connection therewith properly commenced and within the jurisdiction of this Court." Order entered September 21, 1999. Gold Medal and General Mills filed notices of appeal from this order, and the appeals are *sub judice* before the District Court.

Hopewell has now returned to this Court with a motion seeking an order pursuant to Bankruptcy Rule 2004 directing the production of documents and two witnesses by General Mills. The arbitration of the dispute between Hopewell and Gold Medal has been proceeding in Bermuda in accordance with Bermuda practice. Hopewell argues that the requested disclosure is needed in connection with the Bermuda arbitration; it makes no argument that the disclosure is necessary in connection with the location of assets or property of Hopewell in the United States or in connection with any issue that is distinct to the § 304 proceeding. It contends nevertheless that the requested disclosure is within the scope of the terms of Rule 2004(b), which permits discovery of "any matter which may affect the administration of the debtor's estate". Hopewell reasons that the outcome of the arbitration will result in the liquidation of a large claim in its Scheme and thus affect the estate's administration. It also paints § 304 as a continuing grant of jurisdiction to a foreign representative, giving the representative the right to access all of the "procedural" rights that a debtor would have in a U.S. bankruptcy.

General Mills, joined by Gold Medal, objects to the disclosure on two principal grounds. First, it contends that the pendency of the appeal divests this Court of jurisdiction to consider the motion. Second, it argues that the requested disclosure is outside the scope of § 304 and that Rule 2004's broad disclosure grant should not be used when its purpose is to provide discovery in another discrete action. The objectants further contend that Hopewell should not be able to access broad discovery procedures in the United States because it was the very purpose of Hopewell's § 304 proceeding to enjoin proceedings in the United States and to require Gold Medal to arbitrate its claims against Hopewell in Bermuda under Bermuda procedural and substantive law.

*Pendency of Appeal*

The Supreme Court has stated, "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the

appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). This language, cited in both of the Bankruptcy Court decisions relied on by General Mills for its jurisdictional objection, sets forth both the jurisdictional significance of the filing of a notice of appeal and the limitations on the doctrine that the lower court is thereby divested of jurisdiction. The lower court is divested of jurisdiction over "those aspects of the case involved in the appeal", not over any matters that may arise in the matter. Thus, notwithstanding the pendency of an appeal, bankruptcy courts are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal. *See In re Allen–Main Associates, Ltd. Partnership,* 243 B.R. 606, 608–609 (D.Conn.1998). Equally, a bankruptcy court retains jurisdiction, while an appeal is pending and in the absence of a stay, to enforce the order or judgment appealed from. As the court stated in *In re Prudential Lines, Inc.,* 170 B.R. 222, 243 (S.D.N.Y.1994), *appeal dismissed,* 59 F.3d 327 (2d Cir.1995), "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review."

■ Here, the discovery issues raised by Hopewell's motion are collateral to and different from the issues that are before the District Court on appeal. The only overlap is the fact that if this Court's order is reversed and the § 304 proceeding dismissed, any collateral discovery proceedings would likely be dismissed as well. However, no stay of the order has been obtained; indeed, Gold Medal has been proceeding with arbitration in accordance with the requirements of the Bermuda Scheme of Arrangement, in compliance with the § 304 injunction. In the absence of a stay of Judge Brozman's order, it is this Court's duty to continue to administer the § 304 case in accordance with the reservation of jurisdiction contained in the order appealed from, and it has jurisdiction to hear Hopewell's motion.

*Propriety of the Requested Disclosure*

■ Section 304(b) of the Bankruptcy Code permits a foreign representative to commence an ancillary case in the Bankruptcy Court in which the court may:

(1) enjoin the commencement or continuation of-

(A) any action against-

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order the turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

A section 304 petition does not result in the creation of an estate in the United States or a full U.S. bankruptcy proceeding, with all of the procedural and substantive provisions applicable to domestic bankruptcies. *In re Koreag Controle et Revision S.A.,* 961 F.2d 341, 357 (2d Cir. 1992), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). It creates an ancillary proceeding in the United States in aid of the foreign proceeding, the principal purpose of which is to collect assets in the United States, prevent or undo their dismemberment, and remit them to the foreign proceeding for administration there. *In re Goerg,* 844 F.2d 1562, 1567–1568 (11th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989); *In re Gee,* 53 B.R. 891, 898–899 (Bankr.S.D.N.Y.1985).

■ Hopewell, relying on the Court's authority under § 304(b)(3) to "order other

appropriate relief", cites several cases in which bankruptcy courts have ordered discovery in § 304 cases. *See Angulo v. Kedzep Ltd.,* 29 B.R. 417 (S.D.Tex.1983); *Petition of Brierley,* 145 B.R. 151 (Bankr. S.D.N.Y.1992); *In re Gee, supra,* 53 B.R. at 899. However, the discovery actually ordered in those cases related directly to the efforts of a foreign representative to marshal and protect assets in the United States and transfer them to the foreign proceeding for administration there. The decision of this Court in *Brierley,* by Judge Brozman who issued the prior opinion in this case as well as the opinion in *Gee,* is instructive with respect to the scope of the discovery that has heretofore been ordered in § 304 proceedings. The Court stated:

> If there is good reason to believe that there may be property in the United States, then, as I held in *Gee,* discovery ought to be permitted to ascertain the existence of such property, which may consist of a claim or of something more tangible. . . .
>
> If Brierley [the foreign representative] is seeking blanket authority to examine all other as yet unnamed persons who may have information which he deems relevant, a matter which is not entirely clear from his petition, he may not have it. Just as I would want to maintain some control over the extent of discovery conducted under Bankruptcy Rule 2004, I believe I ought exercise the same restraint in this proceeding. Under section 236 of the Insolvency Act [of England, the site of the foreign proceeding in *Brierley* ], a court order is necessary to summon a person to give testimony relevant to the company's administration. It would seem, therefore, that the High Court would also look askance at an order which gives unfettered authority to the administrators to conduct examinations. Implicit in this discussion, of course, is the notion that I will entertain additional applications for discovery so long as the identity of the individual and the need for the examination are

established. Unless there is shown some compelling reason to dispense with prior notice to the person to be examined, any such applications are to be made on prior notice. 145 B.R. at 169–170 (footnote omitted).

Three points are implicit in this passage. First, the court contemplated the possibility that there could be discovery in a § 304 case in aid of the administration of the case abroad, but it did not have occasion to provide therefor, and its actual holding involved discovery in aid of the initial petition seeking to locate and protect assets, the same type of discovery as in *Angulo* and *Gee.* Second, the court in *Brierley* indicated that it would be guided in providing discovery by applicable foreign law, a principle at the core of § 304. Third, the court's language indicates that it did not find Rule 2004 to be an independent source of power to order the requested disclosure.

No case has gone beyond *Brierley* in contemplating the possibility of discovery in aid of a foreign representative's case administration. By contrast, where defendants in a § 304 proceeding sought to pursue an adversary proceeding against the debtor in the § 304 case to adjudicate collateral matters, and to use in that proceeding disclosure that had already been made in the § 304 case, this Court held that the proceeding was beyond the jurisdiction granted to the bankruptcy court in § 304. *Petition of Treco,* 227 B.R. 343 (Bankr.S.D.N.Y.1998). The Court stated, "To the extent that the action preserves, protects or recovers property of the foreign debtor, we have jurisdiction under § 304 to adjudicate it. By contrast, claims that are unrelated to the preservation or recovery of property in aid of a foreign proceeding are outside the ambit of our limited § 304 jurisdictional mandate." *Id.* at 349–350.

The fact that discovery can be ordered in order to aid the foreign representative in locating and remitting assets does not require a finding that the court has broad

jurisdiction to order discovery in connection with the foreign representative's administration of those assets. Analogously, the fact that bankruptcy courts can enjoin a lawsuit against a foreign debtor pursuant to § 304, in order that the court supervising the foreign proceeding take jurisdiction of the matter, does not give the U.S. bankruptcy court jurisdiction to hear the lawsuit. There may be a case in which it would be appropriate to invoke § 304 to order discovery for the benefit of a foreign representative in connection with the liquidation of a claim or the determination of a liability. As this Court has stated, "Pursuant to section 304(b), the court is free to broadly mold appropriate relief in near blank check fashion." *In re Culmer*, 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982). The power to order disclosure is contemplated in the Model Law on Cross Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL) and the model for a new Chapter 15 of the Bankruptcy Code that was passed by the Senate and the House last year but did not become law. H.R. 2415, 106th Cong.2d Sess.; S.3186, 106th Cong., 2d Sess. The Model Law would specifically permit a recognized foreign representative to examine witnesses and take evidence regarding the debtor's assets, affairs, obligations or liabilities, subject to due protection of the rights of creditors and other interested entities. *See* Art. 21(1)(d), Art. 22 of the U.N. Comm'n on Int'l Trade Law, Model Law on Cross–Border Insolvency with Guide to Enactment, U.N. Sales No. E.99.V.3, United Nations Commission on International Trade Law, 30th Sess., at 3, U.N. Doc. A/CN.9/442 (1997), reprinted in 6 Tul. J. Int'l & Comp. L. 415, 439 (1998). Although § 304 is narrower than the Model Law, its broad, remedial purposes would likely allow the court in an appropriate case to provide discovery in aid of the claim liquidation efforts of a foreign representative. But this is not such a case.

Hopewell is not seeking disclosure in connection with its general efforts to determine liabilities but in connection with a separate arbitration proceeding in which it is a litigant. It is nonetheless attempting to obtain disclosure that is only available to a "foreign representative," as only a foreign representative has standing to seek § 304 relief. It would distort the purpose of a statute that requires a court to ensure "just treatment of all holders of claims against or interest in such estate" (§ 304(c)(1)) to provide discovery rights to one party to a matter but not the other and create a fundamental unfairness that Congress could not have intended. This is particularly true in the instant case, where the purpose of this § 304 proceeding was to enjoin arbitration in the United States and to force Gold Medal to arbitrate in Bermuda in accordance with Bermuda procedural and substantive law. This Court granted the petition and enjoined U.S. arbitration in part on the basis that the Bermuda law was fundamentally fair and entitled to comity. Hopewell should not now return to this Court and claim it is entitled to superimpose on a Bermuda arbitration rights it might have in the United States. In requiring Gold Medal to arbitrate in Bermuda under Bermuda law in accordance with the Bermuda Scheme, this Court did not grant comity in part and reserve the right to apply U.S. law from time to time.

The relief Hopewell seeks is particularly inappropriate as it involves an arbitration, which is supposed to take place with a minimum of court supervision or interference. Article 5 of the Bermuda International Conciliation and Arbitration Act of 1993 provides that, "In matters governed by this Law, no court shall intervene except where so provided in this Law." As the Second Circuit recently stated in a related context, in holding that disclosure under 28 U.S.C. § 1782 should not be available on demand to litigants in a foreign arbitration,

> The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—charac-

teristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure.... Opening the door to the type of discovery sought ...in this case likely would undermine one of the significant advantages of arbitration, and thus arguably conflict with the strong federal policy favoring arbitration as an alternative means of dispute resolution.

*National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.,* 165 F.3d 184, 190–91 (2d Cir.1999). *See also Republic of Kazakhstan v. Biedermann International,* 168 F.3d 880 (5th Cir.1999). The same reasoning is applicable in this discovery request under § 304.

 There seems to be no dispute that under Bermuda law litigants in an arbitration cannot themselves require third parties such as General Mills to produce documents or witnesses. Hopewell argues that nothing in Bermuda law prevents it from accessing discovery in the United States, citing the decision of the House of Lords in *South Carolina Ins. Co. v. Assurantie Maatschappij "de Zeven Provincien" NV,* [1986] 3 W.L.R. 398. Hopewell misses the point. To the extent this Court can act under § 304 as an "adjunct" to the foreign court, it should rarely, if ever, exercise its discretion to order disclosure that would not be available in the foreign court. As was noted in *Brierley,* 145 B.R. at 169–70, in a § 304 proceeding, the court is implementing foreign law; it should ordinarily defer to foreign law in disclosure as well as other significant matters, whether they are characterized as "procedural" or "substantive." *Cf. In re Metzeler,* 78 B.R. 674, 677–678 (Bankr.S.D.N.Y.1987).

It is therefore significant that Bermuda law provides a specific procedure for seeking court assistance for the purpose of taking evidence in arbitrations. Article 27 of the Bermuda Arbitration Act provides for "Court assistance in taking evidence"

as follows: "The arbitral tribunal or a party with the approval of the arbitral tribunal may request from a competent court of this State assistance in taking evidence." The arbitral panel thus could possibly ask the Bermuda court for its assistance in seeking disclosure in the United States. The Second Circuit in the *NBC* case did not decide whether a foreign court with jurisdiction over the arbitration could, at the behest of a party or the arbitrators, request discovery through § 1782. Hopewell's counsel on this motion did not rule out the possibility it could seek the assistance of the Bermuda court through the arbitral panel and obtain disclosure from General Mills under 28 U.S.C. § 1782, which is specifically designed to provide foreign litigants with access to U.S. discovery in appropriate cases. The existence of possible recourse under Bermuda law and under § 1782 provides a further reason not to distort § 304 and use it as a discovery tool in aid of arbitration. Moreover, both litigants in the Bermuda proceeding have the same right to apply to the arbitration panel and to seek recourse to the Bermuda court with jurisdiction over the arbitration and to § 1782, obviating the unfairness, noted above, that only a foreign representative can access § 304.

 The weak nexus between the requested discovery and core § 304 jurisdiction, respect for the foreign proceeding, the policy against court intervention in arbitration proceedings, the unfairness of permitting Hopewell to change its position at this point and access rights not afforded to its party opponent, and the existence of other procedures that may provide recourse are all grounds for denial of the Hopewell's motion. Further grounds are found in Rule 2004 itself. Discovery under Rule 2004 is broad, and it encompasses matters relating to the administration of the debtor's estate. But it is generally used for examination of the debtor regarding the debtor's assets and liabilities, not creditors. *In re Dinubilo,* 177 B.R. 932,

940–941 (E.D.Cal.1993); *In re GHR Energy Corp.*, 33 B.R. 451, 455 (Bankr.D.Mass. 1983). More important, courts rarely permit Rule 2004 to be used for discovery in connection with pending adversary proceedings or contested matters. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996); *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274–275 (D.Colo.1991); *In re Dinubilo, supra,* 177 B.R. at 941. Where there is such a separate proceeding pending, parties are remitted to the disclosure procedures that exist in those proceedings. Although the cited cases involved adversary proceedings and contested matters, their reasoning is applicable to a case where the separate proceeding is an arbitration pending in a foreign country.

Rule 2004 provides that the Court "may" order disclosure thereunder, giving the Court significant discretion. Even absent the factors set forth above relating to the scope of section 304 jurisdiction, in light of the pendency of a separate arbitration proceeding, this Court would exercise its discretion to deny the motion on the ground that Rule 2004 disclosure should not be used as a substitute for disclosure that or may not be available in the separate proceeding. Whether disclosure is available in connection with the arbitration, and whether in turn Hopewell would be able to access U.S. discovery through 28 U.S.C. § 1782, are issues not before this Court.

For the reasons set forth above, the motion for discovery under 11 U.S.C. § 304 and Bankruptcy Rule 2004 is denied. It is SO ORDERED.